**Alyson S. BURNS, Appellant–Plaintiff,**

v.

**The CITY OF TERRE HAUTE, Appellee–Defendant.**

**No. 84A01–0011–CV–374.**

Court of Appeals of Indiana.

March 21, 2001.

Stephen L. Williams, Mann Law Firm, Terre Haute, Indiana, Attorney for Appellant.

Mark D. Hassler, Hunt, Hassler & Lorenz LLP, Terre Haute, Indiana, Attorney for Appellee.

### OPINION

BAKER, Judge

Appellant-plaintiff Alyson S. Burns appeals the trial court's grant of summary

judgment in favor of appellee-defendant the City of Terre Haute on her negligence claim. Burns contends that the City may not claim sovereign immunity under section 3(18) of the Indiana Tort Claims Act (ITCA)[1] where a dispatcher misdirected emergency personnel responding to a 911 call. Specifically, she maintains that the dispatcher failed to use the mapping system, and, therefore, the City may not claim immunity for the use of an enhanced emergency communication system.

## FACTS

The facts most favorable to the nonmovant indicate that Burns collapsed suddenly in her parents' home on the evening of February 5, 1999. Shortly after she had collapsed, Burns stopped breathing. Burns's mother Carol then began administering CPR while her father, Daniel, called 911. During his initial call, Daniel spoke with Dispatcher Sara Holbert, one of three dispatchers located in the Terre Haute Fire Department. Michael Dwyer, a second dispatcher, listened to a portion of Daniel's 911 call with Holbert. Dispatcher Dwyer then dispatched three emergency vehicles, including a Terre Haute Fire Department ambulance.

The City participates in the Vigo County enhanced 911 system, or E–911. The system is considered enhanced because a dispatcher automatically receives, without having to ask the caller: the phone number of the person calling 911, the name of the person who has registered the phone number, and the address where the phone is located. Record at 344. The E–911 system also includes a computer mapping program that displays the approximate location of the phone being used to place the emergency call. In using this mapping system, protocol requires a dispatcher to check the E–911 map before giving directions to emergency personnel.

In dispatching the ambulance to Burns's home at 415 Meadows Drive, Dispatcher Dwyer gave directions "off the top of [his] head." R. at 337. He told the ambulance that Meadows Drive was north of Ohio Street, when in fact it was south of Ohio Street. Had Dispatcher Dwyer consulted the E–911 map, he would have seen that Meadows Drive was south of Ohio Street. The ambulance actually drove past the Burns home at which point Daniel unsuccessfully attempted to flag down the vehicle. Daniel then called 911 again and spoke to a third dispatcher, who eventually corrected Dispatcher Dwyer's misdirection. As a result of Dispatcher Dwyer's misdirection, the emergency care providers took nine or ten minutes to arrive at Burns's home, R. at 153, rather than the one minute it should have taken to make a six-block trip from the fire house. R. at 378.

After arriving, the emergency medical care providers transported Burns to a hospital where she was ultimately revived. She has suffered serious and permanent brain damage as a result of the delay in emergency medical care. Burns sued the City of Terre Haute, which was subsequently granted summary judgment. Burns now appeals.

## DISCUSSION AND DECISION
### I. Standard of Review

A grant of summary judgment requires that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). On appeal from summary judgment, the reviewing court faces the same issues that were before the trial court and analyzes them in the same way. *Carie v. PSI Energy, Inc.*, 715 N.E.2d 853, 855 (Ind.1999). We view the pleadings, depositions, answers to interrogatories, and affidavits in the light most favorable to the nonmoving party. *Id.* Although the nonmovant has the burden of demonstrating that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied his day in court. *Id.* Whether a

1. IND.CODE § 34–13–3–3.

particular governmental act is immune from liability is a question of law for the court to decide. *Lake County Juvenile Court v. Swanson,* 671 N.E.2d 429, 439 (Ind.Ct.App.1996), *trans. denied.*

## II. Immunity Under the Indiana Tort Claims Act

Burns maintains that the City may not successfully assert the defense of sovereign immunity. Specifically, Burns contends that Dispatcher Dwyer failed to operate or use the E–911 system, and, therefore, the City may not take refuge under section 3(18)'s immunity grant.

### A. Sovereign Immunity Historically

█ At one time, American states had recognized the principal of sovereign immunity, that is: suit could not be maintained against a state without its consent. *Peavler v. Board of Comr's of Monroe County,* 528 N.E.2d 40, 41 (Ind.1988). In 1972, our supreme court abolished the doctrine of sovereign immunity. *Campbell v. State,* 259 Ind. 55, 63, 284 N.E.2d 733, 737 (1972). The *Campbell* court then explained that, with some exceptions, the legislature was responsible for considering which instances of governmental conduct should be immunized from liability. *Id.* at 61–63, 284 N.E.2d at 736–37. Two years later the General Assembly enacted the ITCA. Act of Feb. 19, 1974, Pub.L.No. 142, 1974 Ind. Acts 599. Under the ITCA, governmental entities and their employees are subject to liability for torts committed by them, unless the activity giving rise to the tort falls within the enumerated exceptions of the ITCA. *See* IND.CODE § 34–13–3–3. Because the ITCA is in derogation of the common law, it must be strictly construed against limitations on the claimant's right to bring suit. *Hinshaw v. Board of Comm'rs of Jay County,* 611 N.E.2d 637, 639 (Ind.1993).

### B. "Enhanced Emergency Communication System"

Our General Assembly has declared that the "provision of emergency medical services is a matter of vital concern affecting the public health, safety, and welfare of the people of Indiana." IND.CODE § 16–31–1–1. Consonant with the public importance of emergency medical services, section 3(18) of the ITCA immunizes a governmental entity if a loss results from the "development, adoption, implementation, operation, maintenance, or use of an enhanced emergency communication system." I.C. § 34–13–3–3(18). In *Barnes v. Antich,* we applied this specific immunity for the first time. 700 N.E.2d 262, 265 (Ind.Ct.App.1998), *trans. denied.* We held that the City of Gary was entitled to immunity where Gary dispatchers repeatedly gave assurances that an ambulance was en route to provide emergency medical care to a heart-attack victim. The ambulance was never dispatched and the victim died. *Id.* at 265–66.

█ In the instant case, the facts and section 3(18) lead us to the same application of immunity. Burns's argument fails to take into account that E–911 embraces more than the computer maps that help guide emergency medical vehicles. When the Director of Vigo County's E–911 was asked what equipment E–911 owns or includes, he responded, "[W]e have got lots and lots of equipment." R. at 466. He went on to specify that E–911 boasted an equipment list twenty pages long, including: a central processing computer, four dispatch centers, computer mapping monitors, modems, "uninterrupted power supply" units, software, data bases, and telephone lines. R. at 466–68. The record also shows that three dispatchers furnished the human support crew for the City's dispatch center. R. at 134. Given the necessary interrelation of each of these components—including the human operators—within a fully operational E–911 system, we cannot say that Dispatcher Dwyer's failure to check the map constituted *non*use of the E–911 system. Burns's loss, then, resulted from the use of an enhanced emergency communication system. Consequently, as a matter of law,

the City was entitled to summary judgment.

Judgment affirmed.

BROOK, J., and BARNES, J., concur.