Annette Donica GILES, as Personal Representative of the Estate of Joey L. Giles and as Surviving Spouse of Joey L. Giles, Deceased, Appellant–Plaintiff,

v.

BROWN COUNTY, Indiana, by and through Its BOARD OF COMMIS-SIONERS, Appellee–Defendant.

No. 03A01–0502–CV–87.

Court of Appeals of Indiana.

Dec. 30, 2005.

Landyn K. Harmon, Eynon Harmon Rocker & Glover, P.C., Patrick W. Harrison, Beck, Harrison & Dalmbert, Columbus, for Appellant.

Thomas J. Belcher, Shannon L. Robinson, Kelley, Belcher & Brown, Bloomington, for Appellee.

## OPINION

MAY, Judge.

Annette Donica Giles ("Giles") appeals a summary judgment for Brown County in a civil suit arising from the death of her husband, Joey Giles ("Joey"). Giles raises one issue, which we restate as whether the

trial court erred in granting summary judgment to Brown County.[1]

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Brown County, Indiana, has operated an enhanced emergency communications system ("E–911") since October 1990. Between January 1, 2000 and December 31, 2002, Brown County contracted for Columbus Regional Hospital ("the Hospital") to provide emergency and non-emergency ambulance services to Brown County residents. The contract required two ambulances be stationed in Brown County to provide service to Brown County residents. The contract also provided: "Additional ambulances may be provided to respond to a request above and beyond the requirement stated above, provided that appropriate staff and ambulances are available." (Appellant's App. at 77.)

On October 25, 2000, Joey experienced chest pains and shortness of breath at his home in Brown County. He called 911 to request an ambulance. The E–911 system worked properly and promptly forwarded Joey's request to the Hospital's Ambulance Service.

Neither ambulance reserved for Brown County was available at the time Joey called.[2] Another ambulance under the control of the Hospital was available; however, this ambulance was reserved for use in Columbus. As a result, the Hospital did not dispatch a Columbus-based ambulance. Instead, the Hospital contacted Bloomington Hospital and asked that an ambulance be dispatched from Bloomington.

In addition to calling 911, Joey called Giles, who was in Columbus. Giles left Columbus immediately. When she arrived home, two first responders were attending to her husband.[3] Some forty-five minutes later, the ambulance from Bloomington Hospital arrived. Shortly thereafter, Joey was pronounced dead.

In October 2002, Giles filed suit against Brown County, the Hospital, and other healthcare providers. With respect to Brown County and the Hospital, Giles alleged their negligent failure to provide emergency medical services to Joey, despite his request, proximately caused his death. Brown County moved for summary judgment on the ground the county was immune under Ind.Code § 34–13–3–3(19).[4] The court denied the motion because the county failed to demonstrate it operated an "enhanced" system as required by the immunity statute. Brown County again moved for summary judgment, this time providing evidence it operated an enhanced 911 system, and the court granted summary judgment in favor of Brown County. Giles now appeals.

---

1. Giles also argues the trial court's interpretation of the controlling statute creates "severe equal protection problems." (Appellant's Br. at 11.) Because we reverse the trial court's grant of summary judgment on other grounds, we do not address Giles' equal protection argument.

2. The record does not reveal why neither ambulance was available.

3. In an affidavit, Giles states "two individuals that I believe to be volunteer firemen" were attending Joey when she arrived home. (App. at 130.) She tentatively identified the two men as "volunteers Steve Shaner and Gene Voils" in a tort claim notice addressed to Brown County and others. (App. at 128.) No further information about these individuals is included in the record.

4. Formerly Ind.Code § 34–13–3–3(18). A 2001 amendment inserted subsection (5) and renumbered subsequent subsections. We will refer to the relevant subsection by its current designation, i.e., subsection (19).

## DISCUSSION AND DECISION

When reviewing the trial court's grant of summary judgment, we apply the same standard the trial court applied. Summary judgment is appropriate if the pleadings and evidence submitted demonstrate there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. We construe the pleadings, affidavits, and designated evidence in the light most favorable to the non-moving party, and the moving party has the burden of demonstrating the absence of a genuine issue of material fact.

*Wilson v. Royal Motor Sales, Inc.,* 812 N.E.2d 133, 135 (Ind.Ct.App.2004) (internal citations omitted), *reh'g denied.*

 Because a trial court's grant of summary judgment comes to us "clothed with a presumption of validity," the appellant must persuade us that error occurred. *Id.* (quoting *Newman v. Deiter,* 702 N.E.2d 1093, 1099 (Ind.Ct.App.1998), *trans. denied* 714 N.E.2d 173 (Ind.1999), *cert. denied* 528 U.S. 931, 120 S.Ct. 329, 145 L.Ed.2d 257 (1999)). Nevertheless, we carefully scrutinize motions for summary judgment to ensure the non-moving party was not improperly denied her day in court. *Id.* If the trial court's entry of summary judgment can be sustained on any theory or basis in the record, we must affirm. *Irwin Mortgage Corp. v. Marion County Treasurer,* 816 N.E.2d 439, 442 (Ind.Ct.App.2004).

 The resolution of this case depends on whether, as a matter of law, Brown County may be cloaked with the immunity provided by Ind.Code § 34–13–3–3(19). This, in turn, depends on whether the Hospital's decision not to dispatch a Columbus-based ambulance ("the dispatching decision") constitutes "use of" the Brown County E–911 system.[5]

A "governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the … [d]evelopment, adoption, implementation, *operation,* maintenance, or *use* of an enhanced emergency communication system." Ind.Code § 34–13–3–3(19) (emphases supplied). Giles argues the complete failure to dispatch an available ambulance is "unrelated to operation or utilization of any 'enhanced' emergency communication system technology to buttress the 911 system, and should be characterized as outside the scope of [this subsection] of the statute." (Appellant's Br. at 9.) Brown County responds the "evidence is absolutely undisputed that [Brown County] operates an enhanced emergency communications system," (Br. of Appellee at 9), and "human failures still constitut[e] 'use' of the system." (*Id.* at 11.)

 Whether a governmental entity is immune from liability for a particular act is a question of law for the court to decide. *Lake County Juvenile Court v. Swanson,* 671 N.E.2d 429, 439 (Ind.Ct.App.1996), *trans. denied* 683 N.E.2d 588 (Ind.1997). The burden is on the governmental entity to prove its conduct falls under the immunity statute. *Id.* at 438–39. The interpretation of a statute is a

---

5. Brown County does not argue it cannot be held liable for the acts of the Hospital, specifically the dispatching decision, but argues only it is entitled to immunity under subsection (19). Brown County also cross-claimed against the Hospital for indemnification under the agreement to provide emergency medical services. In light of our standard of review, we will construe these facts in the light most favorable to Giles and, accordingly, assume Brown County may be liable for the Hospital's dispatching decision. We emphasize this is not a legally binding conclusion regarding liability with respect to Brown County and the Hospital.

matter of law, and we are neither bound by, nor are we required to give deference to, the trial court's interpretation. *Townsend v. State,* 793 N.E.2d 1092, 1094 (Ind. Ct.App.2003), *trans. denied* 804 N.E.2d 757 (Ind.2003). If a statute is unambiguous, that is, susceptible to but one meaning, we must give the statute its clear and plain meaning. *Bolin v. Wingert,* 764 N.E.2d 201, 204 (Ind.2002). If a statute is susceptible to multiple interpretations, however, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. *Id.* We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. *Id.* "Where statutes address the same subject, they are in *pari materia,* and we harmonize them if possible." *Hall Drive Ins, Inc. v. City of Fort Wayne,* 773 N.E.2d 255, 257 (Ind.2002). Because the statute in question is in derogation of the common law, it must be strictly construed against limitations on the claimant's right to bring suit. *Hinshaw v. Board of Comm'rs of Jay County,* 611 N.E.2d 637, 639 (Ind.1993).

Giles frames the issue in this case as "whether there are *any* circumstances under which a county's failure to dispatch an emergency services ambulance summoned by [an] enhanced 911 emergency system telephone call can result in the county's liability." (Appellant's Br. at 8) (emphasis original).

Ind.Code § 34–13–3–3(19) lists six activities related to an enhanced emergency communication system for which a government entity or its employees are not liable: "development, adoption, implementation,

operation, maintenance, or use." The first five terms relate to actions only the governmental entity can take. "Use" is a more general term and may be read to include the actions of others and is the term on which we focus.

To determine whether the failure to send an ambulance from Columbus "result[ed] from" the use of the E–911 system, as required for immunity under Ind. Code § 34–13–3–3(19), we must determine what is included in an E–911 system. Although "an enhanced emergency communication system" is not defined in Title 34, a similar phrase is defined in Title 36. There, "an enhanced emergency telephone system" is defined as "a telephone system that utilizes the three digit number 911 to send automatic number identification ["ANI"] and automatic location identification ["ALI"] for reporting police, fire, medical, or other emergency situations."[6] Ind.Code § 36–8–16–2.

Ind.Code § 36–8–16–14(a) contains an exhaustive list of items for which emergency telephone system fees can be used:

(1) the lease, purchase, or maintenance of enhanced emergency telephone equipment, including necessary computer hardware, software, and data base provisioning;

(2) the rates associated with the service suppliers' enhanced emergency telephone system network services;

(3) the personnel expenses of the emergency telephone system; and

(4) the lease, purchase, construction, or maintenance of voice and data communications equipment, communications infrastructure, or other information technology necessary to provide emergency

---

6. The generally understood purpose of E–911 is to expedite the provision of emergency services by providing the dispatcher with certain information automatically. The Brown County system, for example, provides the caller's telephone number and address, and a map showing the location of the address and the police, fire and ambulance jurisdictions for that address.

response services under authority of the unit imposing the fee.

Similarly, the fees collected for enhanced wireless telephone services and distributed to a PSAP [7] must be used

> for the lease, purchase, or maintenance of wireless enhanced emergency telephone equipment, including:
>
> (1) necessary computer hardware, software, and data base equipment;
>
> (2) personnel expense and training;
>
> (3) the provision of wireless enhanced emergency service; or
>
> (4) educating consumers about the operations, limitations, role, and responsible use of enhanced 911 service.

Ind.Code § 36–8–16.5–41(a).

From these statutory provisions, we may conclude an enhanced emergency telephone system includes telephone equipment, computer hardware and software, a database of information, and personnel. By analogy, an enhanced emergency communication system would include communication equipment, computer hardware and software, a database of information, and personnel.[8] *See, e.g., Burns v. City of Terre Haute,* 744 N.E.2d 1038, 1040 (Ind.Ct.App.2001) ("E–911 embraces more than the computer maps that help guide emergency medical vehicles" and consists of various components "including the human operators."), *trans. denied* 761 N.E.2d 412 (Ind.2001).

The definition we adopt is consistent with the description of the system set out in Brown County's initial contract for E–911 service. That contract, between Indiana Bell Telephone Company and Brown County, includes this description of the system:

> Indiana Bell agrees to provide an Enhanced 9–1–1 system which provides for the use of the exchange network at no charge to the caller via dedicated-direct facilities within the message network between local central offices and the PSAP and a secondary network of lines to transfer calls from a primary PSAP to the proper agency (police, fire, etc.) or to a secondary PSAP.

(App. at 88.) [9] The contract addresses maintenance of equipment, creation and maintenance of the database, and training of personnel. (*Id.* at 90.) In addition, one of the features included in the system "allows a call arriving at the PSAP to be transferred to the appropriate agency via the terminal equipment at the PSAP. All transfers between PSAP's [sic] can include all ANI and ALI information." (*Id.* at 89.) The language of the contract suggests the Brown County E–911 system does not in-

---

7. A PSAP "refers to the public safety answering point that is the public safety agency that receives incoming 911 calls and dispatches appropriate public safety agencies to respond to the calls." Ind.Code § 36–8–16.5–13. Under the initial contract, the PSAP for Brown County was the Brown County Sheriff.

8. We do not suggest the difference between a communication system and a telephone system is merely semantic. "The language employed in a statute is deemed to have been used intentionally." *Townsend v. State,* 793 N.E.2d 1092, 1094 (Ind.Ct.App.2003). A communication system is the more general term and would include non-telephonic means of communication. An example of non-telephonic means of communication might be radios used in a police car or by firefighters. *See* 2001 Ind. OAG No. 6 (advising emergency telephone system fees collected under Ind.Code § 36–8–16.5 may not be used to purchase computerized radio communication systems and noting law enforcement radio equipment for use in squad cars would probably not meet the requirements of this section).

9. The subsequent contract, in place at the time Joey called 911, describes the service only as "E911 Service." (App. at 101.)

clude the agency providing the emergency service ("police, fire, etc.," *id.* at 88), but serves as a link between the person in need of services and the agency charged with providing those services.

This view of an enhanced emergency communication system—including equipment, data and personnel, but excluding the responding agency—is consistent with the statute.[10]

In the case before us, the Hospital was an emergency services provider but not part of the Brown County enhanced emergency communication system. There is no allegation the use of the system caused the Hospital to fail to send an ambulance. As Giles argues, the Hospital's dispatching decision is "unrelated" to the "operation or utilization" of any enhanced aspects of the 911 system. (Appellant's Br. at 9.) Rather, when the two dedicated ambulances were unavailable, the Hospital did not send the other "available" ambulance, choosing instead to request help from Bloomington.

Brown County asserts we should follow *Barnes v. Antich,* 700 N.E.2d 262 (Ind.Ct. App.1998), *trans. denied* 714 N.E.2d 172 (Ind.1999). There, Joseph Antich suffered a heart attack at home and requested an ambulance using the E–911 system employed by Gary, Indiana. Although four calls were made and he received assurance that an ambulance was on the way each time, the city of Gary did not, in fact, dispatch an ambulance. Antich died and his widow brought a wrongful death suit against the city. The city moved to dismiss on the grounds of governmental immunity under Ind.Code § 34–4–16.5–1, *et seq.* We held the "operation of an emergency dispatch system constitutes a gov-

ernmental function entitled to immunity from tort liability." *Barnes,* 700 N.E.2d at 265. We then concluded: "The present case falls squarely within the immunity provided municipalities under Ind.Code § 34–4–16.5–3[ (19) ]." *Id.* at 265–66. Therefore, we reversed and remanded with instructions for the trial court to enter summary judgment for Gary.

We have also construed this statute in *Burns v. City of Terre Haute,* 744 N.E.2d 1038 (Ind.Ct.App.2001). Alyson Burns collapsed at her parents' home and stopped breathing. Her father dialed 911 to summon an ambulance. One of the dispatchers responding to the call dispatched an ambulance to the Burns residence. He gave the driver directions to the residence but did not use the display map included in the E–911 system. As a result, the ambulance drove past the Burns home, prompting Alyson's father to place a second call to 911. The ambulance was routed back to the residence but in the intervening eight or nine minutes, Alyson suffered permanent brain damage. In the subsequent lawsuit, the City of Terre Haute claimed immunity under the same statute. Applying *Barnes,* we held the dispatcher's failure to use the mapping function of the E–911 system was not a *"non* use" of the system that would remove the actions from the statute's cloak of immunity. *Burns,* 744 N.E.2d at 1040 (emphasis original).

The facts provided in *Barnes* do not reveal why the city of Gary did not dispatch an ambulance to the Antich residence—for example, whether an equipment failure prevented the dispatch or whether an inexperienced dispatcher mishandled the call[11]—making it difficult to

---

10. We acknowledge that in some situations the responding agency may be the PSAP, e.g., a Brown County E–911 call requesting assistance from the Brown County Sheriff's Department.

11. As in *Koher v. Dial,* 653 N.E.2d 524 (Ind. Ct.App.1995).

discern exactly why the "case [fell] squarely within the immunity provided" by statute. *Barnes,* 700 N.E.2d at 265. Because we must strictly construe the statute, *see Hinshaw,* 611 N.E.2d 637, we decline to read *Barnes* so broadly that any failure in services flowing from a call to E-911 would fall under the immunity statute. Even under our narrow reading of *Barnes,* however, the facts in *Burns* are clearly within the immunity granted by the statute: the dispatcher misused the E-911 system when he did not consult the map provided as required by protocol.

Brown County, as the governmental entity, has the burden of proving its actions fall within the immunity granted by subsection (19). *Barnes,* 700 N.E.2d at 265. Because Brown County has not demonstrated this dispatching decision constitutes the operation or use of its E-911 system, we find Brown County is not entitled to judgment as a matter of law. Accordingly, the trial court erred in granting Brown County's motion for summary judgment. We reverse and remand for proceedings consistent with this opinion.

Reversed and remanded.

VAIDIK, J., concurs.

SHARPNACK, J., dissents with separate opinion.

SHARPNACK, Judge, dissenting.

I respectfully dissent from the majority's holding that reverses the trial court's grant of summary judgment to Brown County. Based on Ind.Code § 34-13-3-3(19), the enhanced emergency communication system immunity provision of the Indiana Tort Claim Act ("ITCA"), and existing caselaw interpreting this provision, I would hold that Brown County is entitled to governmental immunity, and thereby affirm the trial court's grant of summary judgment in favor of Brown County.

The trial court concluded that Brown County was entitled to immunity under Ind.Code § 34-13-3-3(19), which provides that:

> A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following:
>
> * * * * *
>
> (19) Development, adoption, implementation, operation, maintenance, or use of an enhanced emergency communication system.
>
> * * * * *

Here, the undisputed facts reveal that Brown County operated an enhanced emergency communication system and that it contracted with Columbus Regional Hospital's ambulance service to "station two (2) ambulances ... in Brown County to provide emergency and non-emergency ambulance service." Appellant's Appendix at 34. In October 2000, Joey Giles experienced chest pains and called 911. The parties agree that Brown County's enhanced emergency communication system worked "promptly and efficiently" to notify the Hospital's ambulance service of the dispatch to the Giles house. (Appellant's Brief at 3; Appellee's Brief at 5.) Giles's affidavit designated as part of her opposition to Brown County's motion for summary judgment reveals that two volunteer firemen were at her home with Joey when she arrived home. (Appellant's Appendix at 130.) In Giles's Tort Claim Notice, which Brown County included as part of its designated evidence, she alleges that the Hospital's ambulance service did not dispatch an ambulance to her house despite the fact that the ambulance service had another ambulance on reserve. (Appellant's Appendix at 84.) Giles's affidavit further reveals that an ambulance from

Bloomington Hospital was dispatched to her house. (Appellant's Appendix at 130.)

The majority states that a determination of whether Brown County had immunity under the ITCA "depends on whether the Hospital's decision not to dispatch a Columbus-based ambulance ... constitutes 'use of' the Brown County E–911 system." Slip opinion at 5. I respectfully disagree. Pursuant to Ind.Code § 34–13–3–3, the determination of whether Brown County had immunity under the ITCA depends on whether the *"loss* result[ed] from ... [Brown County's] use of an enhanced emergency communication system." Ind. Code § 34–13–3–3(19) (emphasis added).

We have previously construed this enhanced emergency communication system immunity provision in *Barnes v. Antich,* 700 N.E.2d 262 (Ind.Ct.App.1998), *trans. denied,* and *Burns v. City of Terre Haute,* 744 N.E.2d 1038 (Ind.Ct.App.2001), *trans. denied.*[12] In *Barnes,* Joseph Antich suffered a heart attack at home and dialed 911, which accessed the City of Gary's ("the City") enhanced emergency communication system. *Barnes,* 700 N.E.2d at 264. The dispatcher answered the call and assured Antich that an ambulance would be dispatched. *Id.* Three additional calls were made to 911, and the dispatcher assured the caller each time that an ambulance was on its way. *Id.* The City never dispatched an ambulance, and Antich died. *Id.* Thereafter, Antich's widow brought a wrongful death suit against the City. *Id.* The City filed a motion to dismiss and a motion for summary judgment, both asserting that the City was immune from suit under the enhanced emergency communication system immunity provision of

the ITCA. *Id.* The trial court denied both motions, and the City appealed.

On appeal, we reversed the trial court's denial of the City's motion for summary judgment. *Id.* at 265. We reviewed the enhanced emergency communication system immunity provision and stated that "Indiana's General Assembly has declared that the provision of emergency medical services is a matter of vital concern affecting the public health, safety, and welfare of the people of Indiana." *Id.* (citing Ind. Code § 16–31–1–1). We held that the "operation of an emergency dispatch system constitutes a governmental function entitled to immunity from tort liability" and that the "present case f[e]ll squarely within [that] immunity [provision]." *Id.* at 265–266.

In *Burns,* Alyson Burns collapsed at her parents' home and stopped breathing. *Burns,* 744 N.E.2d at 1039. Her father called 911, and one of the dispatchers dispatched an ambulance to the house. *Id.* The dispatcher gave the ambulance driver directions "off the top of his head" and did not consult the computer mapping program that was part of the City of Terre Haute's ("the City") enhanced emergency communication system. *Id.* The dispatcher's directions were incorrect, and the ambulance drove past the Burns' house. *Id.* Burns's father again called 911, and the ambulance eventually arrived. *Id.* As a result of the dispatcher's misdirection, the ambulance took nine to ten minutes to arrive at the Burns' house, instead of the one minute that it should have taken. *Id.* Burns suffered permanent brain damage and sued the City, which subsequently was granted summary judgment based on the

---

**12.** At the time *Barnes* was decided, the enhanced emergency communication system immunity provision was codified under subsection (18) of Ind.Code § 34–4–16.5–3, and at the time *Burns* was decided, the provision was codified under subsection (18) of Ind. Code § 34–13–3–3.

enhanced emergency communication system immunity provision of the ITCA. *Id.*

On appeal, we noted that "[c]onsonant with the public importance of emergency medical services," the enhanced emergency communication system immunity provision of the ITCA immunizes a governmental entity for use of such a system. *Id.* at 1040 (referring to Ind.Code § 16–31–1–1). We applied *Barnes* and held that:

> In the instant case, the facts and section 3(1[9]) lead us to the same application of immunity. Burns's argument fails to take into account that E–911 embraces more than the computer maps that help guide emergency medical vehicles. When the Director of Vigo County's E–911 was asked what equipment E–911 owns or includes, he responded, "[W]e have got lots and lots of equipment." R. at 466. He went on to specify that E–911 boasted an equipment list twenty pages long, including: a central processing computer, four dispatch centers, computer mapping monitors, modems, "uninterrupted power supply" units, software, data bases, and telephone lines. R. at 466–68. The record also shows that three dispatchers furnished the human support crew for the City's dispatch center. R. at 134. Given the necessary interrelation of each of these components—including the human operators—within a fully operational E–911 system, we cannot say that [the dispatcher's] failure to check the map constituted nonuse of the E–911 system. Burns's loss, then, resulted from the use of an enhanced emergency communication system. Consequently, as a matter of law, the City was entitled to summary judgment.

*Id.* at 1040–1041.

It seems that the cases of *Barnes* and *Burns,* as well as the language of the statute, make clear that a governmental entity is entitled to immunity from suit for the use of an enhanced emergency communication system. I believe that the fact that the facts in *Barnes* do not reveal why the City failed to dispatch an ambulance to Barnes is of no moment. It seems that *Burns* makes clear that the use of an enhanced emergency communication system, even if misused by human error, still constitutes a use of that system that entitles the governmental entity to immunity under the ITCA.

The majority holds that "an enhanced emergency communication system would include communication equipment, computer hardware and software, a database of information, and personnel" but that "the Hospital was an emergency services provider but not part of the Brown County enhanced emergency communication system." Slip opinion at 8, 10. Thus, the majority seems to hold that the enhanced emergency communication system includes only the PSAP that receives incoming 911 calls and dispatches a public safety agency to respond to the calls and any equipment and personnel associated with the PSAP.

Based on our previous construction of the enhanced emergency communication system immunity provision, I must disagree that the responding agency, the Hospital's ambulance service that was dispatched by Brown County, would be excluded from the scope of Brown County's enhanced emergency communication system. Here, like in *Burns,* the point of the enhanced system, the response, did not occur as quickly as desired. I have a hard time not seeing that Brown County was using its enhanced emergency communication system and that, in the course of that use, a function of the system, the dispatch function, failed, perhaps resulting in the death of Joey Giles.

In summary, I disagree with the majority and would affirm the trial court's grant

of summary judgment to Brown County based on the enhanced emergency communication system immunity provision of the ITCA. As a result, I further believe that my colleagues and I should address Giles's remaining equal protection argument. Thus, I respectfully dissent.