Thomas J. OSHINSKI, Appellant–
Plaintiff,

v.

NORTHERN INDIANA COMMUTER
TRANSPORTATION DISTRICT,
Appellee–Defendant.

No. 45A03–0502–CV–58.

Court of Appeals of Indiana.

Feb. 22, 2006.

C. Marshall Friedman, P.C., Andrew S. Williams, St. Louis, MO, Dale E. Allen, Merrillville, for Appellant.

Robert A. Welsh, Harris Welsh & Lukmann, Chesterton, for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Thomas Oshinski appeals the trial court's grant of summary judgment in favor of the Northern Indiana Commuter Transportation District ("NICTD"). We affirm.

### Issues

We address the two dispositive issues, which we restate as:

I. whether Oshinski waived his objection to NICTD's amended affirmative defense by failing to object to such amendment; and

II. whether the State of Indiana has given "blanket consent" to be sued in Indiana courts under the Federal Employer's Liability Act ("FELA"), thus making compliance with the Indiana Tort Claims Act ("ITCA") unnecessary.

### Facts

Oshinski began his employment with NICTD at its Michigan City Terminal in July 1979. Beginning in April 1998 and continuing through April 1999, Oshinski cleaned the tops of rail cars using a NICTD-provided solvent that contained methylene chloride.

On February 9, 2002, Oshinski filed a FELA complaint against NICTD alleging that the carrier had acted negligently by failing to provide him with proper safety equipment. As a result of this alleged negligence, Oshinski claimed that he suffered injuries to his thyroid, lungs, pulmonary system, legs, eyes, and nervous system.

On April 12, 2002, NICTD filed its answer and affirmative defenses. On January 28, 2004, NICTD filed a motion to amend requesting the trial court's permission to add affirmative defenses based on sovereign immunity and non-compliance with the notice provision of ITCA and the Indiana statute of limitations.[1] At a status conference held on February 18, 2004, the trial court granted NICTD's motion, and NICTD filed its amended affirmative defenses on March 5, 2004.

On June 29, 2004, NICTD requested summary judgment based on its sovereign immunity and ITCA affirmative defenses. Oshinski responded to the request on August 27, 2004. The trial court held a hearing on the request on October 18, 2004 and granted summary judgment in favor of NICTD on January 11, 2005. Oshinski now appeals.

### Analysis

Summary judgment is appropriate only if the evidence shows there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Beta Steel v. Rust,* 830 N.E.2d 62, 67 (Ind.Ct.App. 2005).[2] Courts must construe all facts and reasonable inferences drawn from those facts in favor of the nonmoving party. *Beta Steel,* 830 N.E.2d at 67. Appellate review of the grant or denial of a summary judgment motion is limited to those materials designated to the trial court, and appellate courts must carefully review decisions on summary judgment motions to ensure that parties are not improperly denied their day in court. *Id.*

### I. Waiver of Objection to Amended Affirmative Defenses

 Oshinski argues that trial court abused its discretion by allowing NICTD to amend its answer and affirmative defenses nearly two years after filing its original first responsive pleading. He claims he was unfairly prejudiced by the amendment asserting an ITCA defense because by the time the amendment was allowed, the time during which Oshinski could file ITCA notice had already passed. Indiana Trial Rule 15(A) governs amendments to pleadings and provides that, when the time during which a party may amend a pleading as a matter of course has passed, the party "may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires."

It is within the trial court's sound discretion to grant a party leave to amend an answer to include an affirmative defense. The grant will only be reversed for abuse thereof.... Accordingly, a party may not claim error where he has not been prejudiced by the amendment.

*Shewmaker v. Etter* 644 N.E.2d 922, 926 (Ind.Ct.App.1994) (quotations and citations omitted). Oshinski contends that he was prejudiced by NICTD's amendment because he would have had time to furnish ITCA-prescribed notice if the carrier had

---

1. The trial court's grant of summary judgment in favor of NICTD was not based on, and Oshinski has not raised, a statute of limitations issue on appeal.

2. The parties do not argue that there are any genuine issues of material fact in this case.

asserted its sovereign immunity affirmative defense in its original answer.

■ There is nothing in the record that indicates Oshinski filed a written stipulation to NICTD's proposed amendment as mentioned in Indiana Trial Rule 15(A), but he concedes that he failed to object to NICTD's request to amend its affirmative defenses.[3] *See* Appellant's Br. p. 27. "Generally, a party may not raise an issue on appeal that was not raised to the trial court, even in summary judgment proceedings." *McGill v. Ling,* 801 N.E.2d 678, 687 (Ind.Ct.App.2004), *trans. denied.* We conclude that Oshinski's failure to object to NICTD's request to amend its affirmative defenses constituted a waiver of the prejudice argument he now asserts on appeal. His failure to object to the amendment has not, however, affected his argument on the merits of NICTD's claimed defense under ITCA.

## II. Blanket Consent

Oshinski argues the trial court erred by granting NICTD's motion for summary judgment because he was not required to comply with the notice provision of ITCA.

Indiana Code Section 34–13–3–6 provides, in part: "a claim against the state is barred unless notice is filed with the attorney general or the state agency involved within two hundred seventy (270) days after the loss occurs." The parties do not dispute, the trial court found, and we agree that NICTD is a state agency. *See* Ind.Code Chapter 8–5–15 (establishing commuter transportation districts); *see also Gouge v. Northern Indiana Commuter Transp. Dist.,* 670 N.E.2d 363, 369 (Ind. Ct.App.1996) (adopting analysis used by the Federal District Court for the Northern District of Illinois and holding that NICTD is a state agency.); *see* App. p. 7. Despite NICTD's state-agency status, however, Oshinski contends that ITCA compliance was unnecessary under these facts because Indiana has given its "blanket consent" to be sued.

■ A state may not be sued in its own courts unless it has waived its sovereign immunity by expressly consenting to such suit through a "clear declaration" of that consent.[4] *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense*

---

**3.** We find the issue of Oshinski's agreement to NICTD's proposed amendment to be confusing. In his appellate brief, Oshinski states that he did not provide written consent as dictated by Indiana Trial Rule 15(A). *See* Appellant's Br. p. 5. NICTD's appellate brief, however, states that Oshinski stipulated to the amendment, but NICTD does not claim that the stipulation was written. *See* Appellee's Br. p. 18. At the October 18, 2004 hearing on NICTD's motion for summary judgment, NICTD's attorney made a statement similar to that made in its brief: "The plaintiff stipulated, or at least said that that was fine with them, that we should be able to [amend the answer to the complaint]." App. p. 16. Oshinski did not object to the statement, but he did comment at that hearing that he "[didn't] know who agreed to the amending of the petition," because the case had been transferred to him by another attorney within his office. App. p. 28. Finally, in its January 11,

2005 summary judgment order, the trial court found that "The plaintiff did not object to defendant's request to amend and in fact stipulated to the defendant doing so." App. p. 9. Regardless of confusion we find in the record, Oshinski's brief clearly concedes that he did not object to NICTD's request for permission to amend its answer and affirmative defenses: "The record does not indicate that Plaintiff interposed an objection to the Motion for Leave to Amend before it was granted ...." Appellant's Br. p. 27.

**4.** The only current exception is that "Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment—an Amendment enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance." *Coll. Sav. Bank,* 527 U.S. at 670, 119 S.Ct. at 2223.

*Bd.*, 527 U.S. 666, 680, 119 S.Ct. 2219, 2228, 144 L.Ed.2d 605 (1999). In the context of this case, the term "blanket consent" refers to Indiana's complete, "no strings attached" consent to be sued in its own state courts. Here, that means consent to be sued without regard for ITCA. "Qualified consent," for purposes of this opinion, means limited consent with "strings"—here, ITCA compliance. The primary dispute in this case focuses on whether Indiana has given blanket consent to be sued in FELA actions brought in state court. NICTD seems to concede that the State has given consent as qualified by ITCA. We find a brief history of the United States Supreme Court's Eleventh Amendment jurisprudence instructive before analyzing further the question of blanket consent.

During the last several decades, the Supreme Court's Eleventh Amendment[5] jurisprudence has undergone a significant evolution. In 1964 the Court decided *Parden v. Terminal Railway of Alabama Docks Department*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), a FELA case which set out a two-part holding:

> In *Parden*, we permitted employees of a railroad owned and operated by Alabama to bring an action under the Federal Employers' Liability Act (FELA) against their employer. Despite the absence of any provision in the statute specifically referring to the States, we held that the Act authorized suits against the States by virtue of its general provision subjecting to suit "[e]very

common carrier by railroad ... engaging in commerce between ... the several States." We further held that Alabama had waived its immunity from FELA suit even though Alabama law expressly disavowed any such waiver:

> "By enacting the [FELA] ... Congress conditioned the right to operate a railroad in interstate commerce upon amenability to suit in federal court as provided by the Act; by thereafter operating a railroad in interstate commerce, Alabama must be taken to have accepted that condition and thus to have consented to suit."

*Coll. Sav. Bank*, 527 U.S. at 676–77, 119 S.Ct. at 2226 (alterations in original), (citations omitted). The first portion of the *Parden* holding is commonly referred to as its statutory construction holding and the second as its constructive waiver holding.

Over the next several decades, the Court began to chip away at *Parden*, limiting its holdings, and, in *Welch v. Texas Department of Highways and Public Transportation*, 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987), it expressly overruled *Parden's* constructive waiver holding.

In *Welch*, although we expressly avoided addressing the constitutionality of Congress's conditioning a State's engaging in Commerce Clause activity upon the State's waiver of sovereign immunity, we said there was "no doubt that *Parden's* discussion of congressional intent to negate Eleventh Amendment immunity is no longer good law," and overruled *Parden* "to the extent [it] is inconsistent

---

**5.** The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." As a matter of semantics, we note that it is common to refer to the states' immunity from

suit in their own courts as "Eleventh Amendment immunity" even though. "The phrase is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Alden v. Maine*, 527 U.S. 706, 713, 119 S.Ct. 2240, 2246, 144 L.Ed.2d 636 (1999).

with the requirement that an abrogation of Eleventh Amendment immunity by Congress must be expressed in unmistakably clear language."

*Coll. Sav. Bank,* 527 U.S. at 678, 119 S.Ct. at 2227 (alteration in original), (citations omitted).

In *Hilton v. South Carolina Public Railways Commission,* 502 U.S. 197, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991), the Court again addressed the states' sovereign immunity in the context of a FELA claim. Relying on stare decisis, *Hilton* held that FELA creates a cause of action against a state-owned railroad enforceable in state court, thus partially reaffirming *Parden.*

In *Parden* we held that FELA authorizes suits for damages against state-owned railroads, and that by entering the business of operating a railroad a State waives its Eleventh Amendment immunity from suit in federal court. The latter holding was overruled in *Welch,* to accord with our more recent Eleventh Amendment jurisprudence, but the *Welch* Court was explicit in declining to decide whether in the Jones Act (or in FELA) Congress intended to create a cause of action against the States. In other words, the *Welch* decision did not disturb the statutory-construction holding of *Parden.*

*Hilton,* 502 U.S. at 200, 112 S.Ct. at 563 (citations omitted).

In explaining its decision, the *Hilton* Court noted, "Workers' compensation laws in many States specifically exclude railroad workers from their coverage because of the assumption that FELA provides adequate protection for those workers." *Id.* at 202–03, 112 S.Ct. at 564. The Court

then specifically noted in a string cite that Indiana exempts railroad workers from recovering under state worker's compensation laws.[6] *Id.* at 203, 112 S.Ct. at 564. It is this statement from *Hilton* on which Oshinski bases his blanket consent argument.

In *College Savings Bank,* the Court spoke out more forcefully against *Parden* and seemingly drove the final nail in the sovereign immunity coffin of *Parden* by expressly overruling that decision.

We think that the constructive-waiver experiment of *Parden* was ill conceived, and see no merit in attempting to salvage any remnant of it.... *Parden* broke sharply with prior cases, and is fundamentally incompatible with later ones. We have never applied the holding of *Parden* to another statute, and in fact have narrowed the case in every subsequent opinion in which it has been under consideration. In short, *Parden* stands as an anomaly in the jurisprudence of sovereign immunity, and indeed in the jurisprudence of constitutional law. Today, we drop the other shoe: Whatever may remain of our decision in *Parden* is expressly overruled.

... [W]e cannot square *Parden* with our cases requiring that a State's express waiver of sovereign immunity be unequivocal. The whole point of requiring a "clear declaration" by the State of its waiver is to be certain that the State in fact consents to suit.

Indeed, *Parden*-style waivers are simply unheard of in the context of other constitutionally protected privileges. As we said in *Edelman* [*v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662

---

**6.** Indiana Code Section 22–3–2–2(b) provides that railroad workers are exempt from coverage by Indiana's worker's compensation laws.

(1974)], "[c]onstructive consent is not a doctrine commonly associated with the surrender of constitutional rights...." The classic description of an effective waiver of a constitutional right is the "intentional relinquishment or abandonment of a known right or privilege." "[C]ourts indulge every reasonable presumption against waiver" of fundamental constitutional rights. State sovereign immunity, no less than the right to trial by jury in criminal cases, is constitutionally protected. And in the context of federal sovereign immunity—obviously the closest analogy to the present case—it is well established that waivers are not implied.... We see no reason why the rule should be different with respect to state sovereign immunity.

*Coll. Sav. Bank*, 527 U.S. at 680–82, 119 S.Ct. at 2228–29 (citations omitted).

*College Savings Bank* clearly overruled *Parden*, and NICTD argues that because *Parden* was overruled, and because *Hilton* relied on *Parden*, that *Hilton*, too—including the *Hilton* Court's statement regarding Indiana's workers' compensation statutes—was implicitly overruled by *College Savings Bank*. On the same day that the Court decided *College Savings Bank*, however, it also decided *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), and that decision is the basis for a substantial portion of the dispute between the parties.

The *Alden* Court held that "the powers delegated to Congress under Article I of the United States Constitution do not include the power to subject nonconsenting States to private suits for damages in state courts," *Alden*, 527 U.S. at 712, 119 S.Ct. at 2246, and that "the State of Maine [did] not consent[ ] to suits for overtime pay and liquidated damages under the [Fair Labor Standards Act]." *Id.*

*Alden* did recognize that *Parden* had been expressly overruled. *Id.* at 732, 119 S.Ct. at 2256; however, a portion of *Alden* attempts to explain *Hilton* and specifically refers to the *Hilton* Court's mention of several states', including Indiana's, worker's compensation statutes stating:

> *Hilton*, then, must be read in light of the doctrinal basis of *Parden*, the issues presented and argued by the parties, and the substantial reliance interests drawn into question by the litigation. When so read, we believe the decision is best understood not as recognizing a congressional power to subject nonconsenting States to private suits in their own courts, nor even as endorsing the constructive waiver theory of *Parden*, but as simply adhering, as a matter of stare decisis and presumed historical fact, to the narrow proposition that *certain States had consented to be sued by injured workers covered by FELA, at least in their own courts.*

*Alden*, 527 U.S. at 737–38, 119 S.Ct. at 2258 (emphasis added).

Oshinski contends that this paragraph is an "implicit re-affirmation of *Hilton*," and that, when read together, this paragraph of *Alden* and the *Hilton* Court's reference to Indiana's worker's compensation statutes are a conclusive statement by the United States Supreme Court that Indiana has given blanket consent to suit under FELA in Indiana courts. Appellant's Br. p. 21. NICTD disagrees and interprets this quote from *Alden* as the Supreme Court's simply dismissing the *Alden* plaintiffs' reliance on *Hilton*. *See* Appellee's Br. p. 11.

Relying on the *College Savings Bank* language that overruled *Hilton*, NICTD argues that *College Savings Bank* "stripped *Hilton* of whatever limited usefulness it may ever have had." Appellee's Br. p. 12. NICTD's brief continues,

however: "The 'statutory construction' determination of the Supreme Court in *Hilton* applying FELA to suits against state agencies in state courts is now relevant only if it can be found that the state has expressed by a 'clear declaration' its unequivocal consent to waive its ... immunity." *Id.* Oshinski counters that the Supreme Court has, through *Hilton* and *Alden*, already held that Indiana has given such consent by composing its worker's compensation statutes so that railroad workers are excluded from their purview.

In light of NICTD's two arguments, it is unclear whether the carrier concedes that *Hilton*'s statutory construction holding remains "good law" because, on the one hand, it argues that *Alden* overruled *Hilton* and, on the other, it asserts that *Hilton*'s usefulness is merely restricted. NICTD's hesitation with regard to *Hilton*'s vitality is of little moment in this case, however, because we hold that Indiana has not given blanket consent to be sued under FELA in Indiana courts. Therefore, we need not decide whether or to what extent *Hilton* has been overruled. Further, we do not believe that the Supreme Court has held that Indiana has given blanket consent in this regard.

The Supreme Court has unmistakably held that a state must issue a "clear decla-

ration" of its consent to suit. *Coll. Sav. Bank*, 527 U.S at 680, 119 S.Ct. at 2228. This rule is the same as the long-standing proposition that, in the context of federal sovereign immunity, "waiver[s] cannot be implied but must be unequivocally expressed." *U.S. v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969).

In 1972 our supreme court issued such an unequivocal statement and abolished the doctrine of sovereign immunity in almost all tort cases.[7] *Burns v. City of Terre Haute*, 744 N.E.2d 1038, 1040 (Ind. Ct.App.2001), *trans. denied* (citing *Campbell v. State*, 284 N.E.2d 733, 737, 259 Ind. 55, 63 (Ind.1972)); *see Benton v. City of Oakland City*, 721 N.E.2d 224, 227 (Ind. 1999).[8] The *Campbell* court explained that the legislature is primarily responsible for considering which instances of governmental conduct should be immunized from liability, and, in 1974, the General Assembly enacted ITCA. *Burns*, 744 N.E.2d at 1040.

■ ITCA governs tort claims against governmental entities and public employees and partially reinstated the sovereign immunity abolished by the *Campbell* court. I.C. Chapter 34–13–3. Pursuant to ITCA, governmental entities can be subjected to liability for tortious conduct unless the conduct is within an immunity granted by

---

7. Article IV, Section 24 of the Indiana Constitution provides: "Provision may be made, by general law, for bringing suit against the State ...."

8. [*Campbell*] ... abrogated the common law doctrine of sovereign immunity in almost all respects. The breadth of its language eliminating sovereign immunity made clear that after *Campbell*, the tort liability of a governmental unit would be exactly the same as a private defendant in almost all respects.

But the word "almost" in the preceding two sentences is important. *Campbell* did acknowledge "that some vestige of the gov-

ernmental immunity must be retained." *Campbell* identified three situations where governmental units would not be liable for "acts or omissions which might cause damage to persons": (1) where a city or state fails to provide adequate police protection to prevent crime; (2) where a state official makes an appointment of an individual whose incompetent performance gives rise to a suit alleging negligence on the part of the state official for making such an appointment; and (3) where judicial decision-making is challenged.
*Benton v. City of Oakland City*, 721 N.E.2d at 227 (citations omitted).

Section 3 of ITCA. *Richardson v. Salaam,* 726 N.E.2d 888, 893 (Ind.Ct.App.2000), *trans. denied.* See I.C. § 34–13–3–3. ITCA places limitations on Indiana's immunity by barring a potential plaintiff's suit unless he or she complies with the notice requirements set out in that section. I.C. § 34–13–3–6. In other words, ITCA operates as an unequivocal statement of Indiana's consent to be sued in tort provided certain qualifications—including notice—are fulfilled. Such a limitation plainly is acceptable. *See Raygor v. Regents of the Univ. of Minn.,* 534 U.S. 533, 122 S.Ct. 999, 1006, 152 L.Ed.2d 27 (2002) ("[A] State may prescribe the terms and conditions on which it consents to be sued.").

■ The next question relevant to our analysis is whether Indiana's qualified consent to tort suits as described above is properly extended to FELA suits filed in Indiana courts against the State. We conclude that such extension is proper because FELA claims are tort claims. The parties do not argue otherwise.

45 U.S.C. § 51 creates a cause of action through which a railroad employee or his or her family can recover for an employer's negligence, and while this section does not explicitly define the action as one in tort, federal case law characterizes it as such. *See Simpson v. N.E. Reg'l Commuter R.R. Corp.,* 957 F.Supp. 136, 138 (N.D.Ill.1997) (stating that FELA is not a strict liability statute and that a plaintiff must still prove foreseeability, duty, breach, and causation.); *Tennant v. Peoria & Pekin Union Ry.,* 321 U.S. 29, 32, 64 S.Ct. 409, 411, 88 L.Ed. 520 (1944), (stating recovery under FELA requires an injured employee to prove that the defendant employer was negligent and that the negligence proximately caused, in whole or in part, the accident); 45 U.S.C. §§ 53, 54

(governing contributory negligence, diminution in damages, and assumption of risk). Because we conclude that FELA actions are tort actions, we hold that FELA suits against the State filed in Indiana courts are properly limited by the qualifications set forth in ITCA.

■ Without sufficient cogent reasoning,[9] Oshinski argues that Indiana's worker's compensation statutes operate as a statement of the State's blanket consent to FELA claims. We reiterate that a state may only be sued in its own state courts where it has waived sovereign immunity through a clear declaration. *Coll. Sav. Bank,* 527 U.S. at 680, 119 S.Ct. at 2228. Our supreme court's abolition of sovereign immunity in *Campbell,* coupled with ITCA, is a clear statement of Indiana's retention of only qualified immunity in tort actions, including FELA actions. Oshinski encourages us to conclude that Indiana's worker's compensation statutes, which exclude railroad workers, illustrate the State's desire to shed its remaining immunity in the narrow context of FELA claims. We do not agree.

We can not conceive of any way in which the worker's compensation statutes could be read as an unambiguous statement of Indiana's blanket consent to FELA suits against the State in Indiana state courts. Indiana Code Section 22–3–2–2(b) simply provides that Indiana's worker's compensation statutes do not apply to railroad workers. The legislature makes no mention of FELA in that statute, and we are aware of no Indiana case in which our judiciary has made a statement regarding the State's blanket consent in FELA cases. We have already identified *Campbell* and ITCA as unequivocal statements by the judiciary and legislature declaring Indiana's qualified consent in tort claims.

**9.** *See* Ind. Appellate Rule 46(A)(8)(a).

Those statements are unfalteringly clear in their purpose, and there is no similarity between the level of clarity in those statements and in that which Oshinski contends is present in the worker's compensation statutes.

Even if we were persuaded there is merit in the premise Oshinski sets forth, his argument remains unconvincing. At the very most, Indiana's worker's compensation statutes could be read as some sort of *implied* waiver of Indiana's sovereign immunity. A waiver by implication simply is not good enough. As in the context of federal sovereign immunity, a state's waiver of its sovereign immunity may not be implied. *See Coll. Sav. Bank,* 527 U.S. at 682, 119 S.Ct. at 2229.

Finally, Oshinski posits that the Supreme Court held in *Hilton* and *Alden* that Indiana has given blanket consent to FELA suits against the State in Indiana state courts. As we commented during oral argument,[10] Oshinski seems to be asking us to read the Supreme Court's tea leaves. We are not persuaded that the Court's statements in *Hilton* and *Alden* should be assigned as much significance as Oshinski urges. Instead, we read them to be mere obiter dicta, meaning they were unnecessary to the opinions and lack precedential effect. *See* Black's Law Dictionary 1100 (7th ed.1999).

In the alternative, if the Supreme Court *did* intend for its statements to be more than dicta, they do not affect our holding in this case. The *Hilton* Court stated, "Worker's compensation laws in many States [ (e.g. Indiana) ] specifically exclude railroad workers from their coverage because of the assumption that FELA provides adequate protection for those workers." *Hilton,* 502 U.S. at 202–03, 112 S.Ct.

at 564. In *Alden,* the Court said that *Hilton* "is best understood ... as simply adhering, as a matter of stare decisis and presumed historical fact, to the narrow proposition that certain States had consented to be sued by injured workers covered by FELA, at least in their own states." *Alden,* 527 U.S. at 737–38, 119 S.Ct. at 2258.

Even if we read these statements as holdings regarding Indiana's consent to be sued in state court under FELA, nothing in them suggests blanket consent. In particular, the *Hilton* Court seemed to opine that states, such as Indiana, excluded railroad workers from their worker's compensation statutes with the expectation that FELA would provide those workers with a cause of action. Our holding in this case does not run contrary to that policy consideration because we conclude that FELA claims against the State remain available to workers who comply with ITCA's qualifications. Our holding is consistent with the considerations voiced by the Supreme Court.

## Conclusion

Oshinski concedes that he did not object to NICTD's request to amend its answer and affirmative defenses. He has thus waived this argument. Through *Campbell* and the Indiana Tort Claims Act, Indiana has given its qualified consent to be sued in tort actions brought in Indiana state courts. FELA actions are tort actions, and, as such, are subject to ITCA's qualifications. The State of Indiana has issued no unequivocal statement giving its blanket consent to be sued in Indiana state courts under FELA.

There are no genuine issues of material fact in this case. Based on our holdings,

10. Oral argument was held on January 10, 2006 in Indianapolis. We commend both parties for their excellent legal presentations.

we conclude that NICTD was entitled to judgment as a matter of law. The trial court properly granted summary judgment in favor of NICTD. We affirm.

Affirmed.

CRONE, J., and NAJAM, J., concur.