**Lora Wilson BROWN, Appellant–Plaintiff,**

v.

**Brian S. ALEXANDER and Richmond Power and Light, Appellees–Defendants.**

No. 89A04–0702–CV–73.

Court of Appeals of Indiana.

Nov. 15, 2007.

Steven E. Springer, Eric D. Johnson, Kightlinger & Gray, LLP, Indianapolis, IN, Attorneys for Appellant.

Kenneth Collier–Magar, Collier–Magar & Roberts, P.C., Indianapolis, IN, Attorney for Appellees.

## OPINION

KIRSCH, Judge.

Lora Wilson Brown ("Brown") appeals from the trial court's grant of summary judgment in favor of Richmond Power and Light ("P & L") and Brian S. Alexander ("Alexander"). The sole issue presented for our review is whether the trial court erred as a matter of law in holding that Brown failed to substantially comply with the notice provisions under the Indiana Tort Claims Act, IC 34–13–3–1 to –25 (the "ITCA").

We affirm.

## FACTS AND PROCEDURAL HISTORY

On September 27, 2002, Brown was driving her automobile when a loose trailer, which had been attached to a P & L truck being driven by Alexander, crossed the centerline and collided head-on with Brown's automobile. At the time of the accident, Alexander was driving the truck in the course and scope of his employment with P & L. P & L is a governmental agency of the City of Richmond.[1] The undisputed evidence established that a safety chain was missing from the trailer prior to the accident but had never been replaced. *Appellant's App.* at 30–31. As a result of the accident, Brown's car was totaled and she incurred "over $44,000 in medical expenses." *Appellant's Br.* at 2.

Shortly after the accident, P & L employee Robert Hart notified Laurie Boyce about the accident. Boyce was a claims representative with The Hylant Group ("Hylant"), which was the third-party administrator responsible for claims arising out of the Indiana Municipal Insurance Fund. In her position with Hylant, Boyce had the authority to settle Brown's claim on behalf of P & L and Alexander up to a certain dollar limit.

Boyce began working on Brown's claim on September 30, 2002, tried to contact Brown and, while investigating both the cause of the accident and the extent of her injuries, made the following notes:

9/30/2002: trailer came unhitched & hit OV. Loss notice indicates total loss of 1987 Toyota & also indicates injury to leg & head of claimant. Initial reserve set to cover cost of total loss plus med pay. Will update reserve if necessary after further info obtained.

9/30/2002: Do not have telephone number for claimant. Checked claim rep web sight [sic] but did not come up w/number for claimant. Sending ltr to clmt asking her to call. Loss notice indicates claimant was injured in accident, so will take recorded statement when she calls.

9/30/2002: Per Bob Hart clmt was pinned in car for about ½ hour after trailer came into her lane & collided w/her 1987 toyota. She was taken to hospital & was released on saturday. They thought she might have a broken left ankle & left leg, but Bob is not sure was was [sic] found when she went to the hospital. He does not have police

---

1. While neither party contends that P & L is anything other than a governmental agency for purposes of the ITCA, we note this court's holding in *Turner v. Richmond Power and Light Co.*, where, in a case involving worker's compensation issues, our court found that "[P & L] was a hybrid entity; it retained aspects that indicated that it was an agency or department of the City of Richmond, and other aspects which indicated that it was a separate and distinct entity from the municipality." 763 N.E.2d 1005, 1007 (Ind.Ct.App.2002), *trans. denied.*

report yet but will fax it when he receives it. Clmt's number is. . . .

9/30/2002: Called clmt—not home. Will try calling later. . . .

*Appellant's App.* at 40.

From September 30 through October 3, 2002, Boyce tried to reach Brown by telephone six times, but was unsuccessful. *Id.* When Brown finally answered her telephone on October 4, she stated she was leaving for the doctor and could not talk. That same day, Boyce received a call from Brown's treating hospital and learned that the injuries to Brown's leg and ankle required her to attend physical therapy two to three times a week. Boyce also learned that the hospital would send bills directly to Boyce along with weekly therapy notes. *Id.*

Boyce contacted Brown on October 9, 2002 to obtain a recorded statement, but Brown refused, noting that she had been told by several people not to discuss the accident. *Id.* at 41. Brown told Boyce that she was not represented by counsel, that she did not yet have a complete diagnosis, and that doctors were treating her for an injured left leg and left foot. On October 14, 2002, Boyce called to inquire about Brown's status and to find out whether she had lost any time from work. Brown stated that she needed to call Boyce back, but failed to do so. Later that day, Boyce called again and was told that Brown had left for the day.

Boyce's attempts to make contact with Brown during the following weeks were unsuccessful, but on October 24, 2002, she spoke with Brown's attorney John Keller regarding a property settlement for

Brown's vehicle. The parties agreed on $1,965, which Boyce paid on October 24, 2002. *Id.* at 42. On November 15, 2002, Keller informed Boyce that he would collect documentation with respect to Brown's medical bills and would submit a settlement package to Boyce.

Boyce did not hear from Brown or her attorney for the rest of 2002, for all of 2003, and for the first eight months of 2004. During that time, however, Boyce checked the status of the file every sixty days and, on April 8, 2004, closed the property damage file pertaining to Brown's car and opened a file relating only to Brown's bodily injury claim. Boyce again made a note to check the status of the bodily injury file every sixty days. Neither Brown nor her attorney had contact with Boyce or P & L until Brown's new attorney, Stephen Bernat of Cincinnati, Ohio, filed a complaint for Brown's personal injury on September 10, 2004, seventeen days before the statute of limitations was due to expire.[2]

In October 2004, P & L and Alexander filed an answer and affirmative defenses to Brown's claim.[3] P & L filed a motion for summary judgment in December 2005, alleging that they were entitled to judgment as a matter of law because Brown had not filed or served the notice required under the ITCA. *See* IC 34–13–3–8, –10, –12. Following a hearing on the matter, the trial court granted the motion on December 20, 2006, and Brown now appeals.

## DISCUSSION AND DECISION

■ When reviewing the trial court's grant of summary judgment, we apply the same standard the trial court applied.

2. A copy of the complaint is not included in the record before us.

3. Brown does not differentiate between the arguments made against P & L and those made against Alexander. Because P & L and

Alexander are represented by the same attorneys addressing the same arguments for each party, our reference to P & L hereafter refers to both P & L and Alexander.

*Cracker Barrel Old Country Store, Inc. v. Town of Plainfield ex rel. Plainfield Plan Comm'n,* 848 N.E.2d 285, 289 (Ind.Ct.App. 2006), *trans. denied.* Summary judgment is appropriate if the pleadings and evidence submitted demonstrate there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* We construe the pleadings, affidavits, and designated evidence in the light most favorable to the non-moving party, and the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Id.* (citing *Wilson v. Royal Motor Sales, Inc.,* 812 N.E.2d 133, 135 (Ind.Ct.App.2004)). Because a trial court's grant of summary judgment comes to us clothed with a presumption of validity, the appellant must persuade us that error occurred. *Id.* Nevertheless, we carefully scrutinize motions for summary judgment to ensure that the non-moving party was not improperly denied her day in court. *Id.* If the trial court's entry of summary judgment can be sustained on any theory or basis in the record, we must affirm. *Id.; Irwin Mortgage Corp. v. Marion County Treasurer,* 816 N.E.2d 439, 442 (Ind.Ct.App.2004). Compliance with the ITCA is a question of law properly determined by the court. *Irwin Mortgage,* 816 N.E.2d at 445. A judgment based on non-compliance with the ITCA is subject to review as a negative judgment, and we will reverse the trial court's determination only if it is contrary to law. *Hasty v. Floyd Mem'l Hosp.,* 612 N.E.2d 119, 121 (Ind.Ct.App.1992).

P & L asserts that the trial court's grant of summary judgment was proper based on Brown's failure to comply with the notice requirements of the ITCA. Brown counters that the trial court erred in granting summary judgment because the purposes of the notice requirements under the ITCA were fulfilled, i.e., to provide a governmental entity with the opportunity to investigate an incident for the purposes of making liability determinations and preparing a defense. Specifically, she contends that P & L's insurer, at P & L's behest, performed a full investigation of this matter, during which it became aware that the trailer detached from Alexander's truck, crossed into Brown's lane, hit her vehicle and caused her property damage and physical injury. She claims that the "insurer knew how the accident occurred, the identities of the relevant parties, the extent of the damage to Brown's vehicle, that there were personal injuries, the nature and extent of those injuries, and a phone number and address where Brown could be reached." *Appellant's Br.* at 6.

The ITCA governs tort claims against governmental entities and public employees and partially reinstated the sovereign immunity abolished by our Supreme Court in *Campbell v. State,* 259 Ind. 55, 284 N.E.2d 733 (1972). *Oshinski v. N. Ind. Commuter Transp. Dist.,* 843 N.E.2d 536, 543 (Ind.Ct.App.2006). Pursuant to the ITCA, "governmental entities can be subjected to liability for tortious conduct unless the conduct is within an immunity granted by Section 3 of [the] ITCA." *Id.* at 543–44; *Richardson v. Salaam,* 726 N.E.2d 888, 893 (Ind.Ct.App.2000), *trans. denied.* The ITCA places limitations on Indiana's liability by barring a potential plaintiff's suit unless he or she complies with the notice requirements. *Oshinski,* 843 N.E.2d at 544. In other words, the ITCA "operates as an unequivocal statement of Indiana's consent to be sued in tort provided certain qualifications—including notice—are fulfilled." *Id.* Such a limitation plainly is acceptable. *Id.; see Raygor v. Regents of the Univ. of Minn.,* 534 U.S. 533, 543, 122 S.Ct. 999, 1006, 152 L.Ed.2d 27 (2002) ("[A] State may pre-

scribe the terms and conditions on which it consents to be sued.").

The ITCA's relevant notice provisions provide in part:

(a) Except as provided in section 9 [pertaining to incapacitated plaintiffs] of this chapter, a claim against a political subdivision is barred unless notice is filed with:

(1) the governing body of that political subdivision; and

(2) the Indiana political subdivision risk management commission created under IC 27-1-29;

within one hundred eighty (180) days after the loss occurs.

IC 34-13-3-8. The notice must:

describe in a short and plain statement the facts on which the claim is based. The statement must include the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of the damages sought, and the residence of the person making the claim at the time of the loss and at the time of filing the notice.

IC 34-13-3-10. The ITCA further provides:

Within ninety (90) days of the filing of a claim, the governmental entity shall notify the claimant in writing of its approval or denial of the claim. A claim is denied if the governmental entity fails to approve the claim in its entirety within ninety (90) days, unless the parties have reached a settlement before the expiration of that period.

IC 34-13-3-11.

 Our courts have stated that a liberal application of the requirements of the ITCA notice statute is proper in order to avoid denying plaintiffs an opportunity to bring a claim where the purpose of the statute has been satisfied. *See Galbreath v. City of Indianapolis,* 253 Ind. 472, 479–80, 255 N.E.2d 225, 229 (1970); *Daugherty v. Dearborn County,* 827 N.E.2d 34, 36 (Ind.Ct.App.2005), *trans. denied.* As such, we have found that not all technical violations of this statute are fatal to a claim. *City of Tipton v. Baxter,* 593 N.E.2d 1280, 1282 (Ind.Ct.App.1992). Non-compliance has been excused in certain cases based on the theories of substantial compliance, waiver, and estoppel. *Daugherty,* 827 N.E.2d at 36; *Baxter,* 593 N.E.2d at 1282. While each of these theories may allow a claim to proceed notwithstanding defective notice, the rationale for doing so is distinct.

In *Allen v. Lake County Jail,* 496 N.E.2d 412 (Ind.Ct.App.1986), our court explained these three theories as follows:

The terms substantial compliance, waiver, and estoppel, while used interchangeably by some courts, are theoretically distinct. Substantial compliance focuses on the nature of the notice itself, and is concerned with the extent to which the form, content, and timing of the notice given by a plaintiff complies with the statutory requirements. For example, in *Galbreath v. City of Indianapolis,* supra, our supreme court found that the plaintiff's letters, which were timely and contained the information required by the statute, but which were sent to the city legal department rather than to the mayor (the designated official under the statute), constituted substantial compliance with the statute. *Galbreath,* 255 N.E.2d at 229.

In contrast to the theory of substantial compliance, the theory of waiver focuses not on plaintiff's notice but on defendant's failure to timely raise plaintiff's non-compliance with the statute as a defense. For example, in *Thompson v. City of Aurora* (1975), 263 Ind. 187, 325 N.E.2d 839, 841, our supreme court

stated that "[a] plaintiff's failure to give the required notice … *is a defense which must be asserted in a responsive pleading.*" (Original emphasis.) And, in *Geyer v. City of Logansport* (1977), 267 Ind. 334, 370 N.E.2d 333, 337, our supreme court held that the defendant's answer, which merely stated that defendant lacked "information to form a belief as to the allegation that written notice [had] been served," was insufficient to raise the question of compliance with the notice statute.

Finally, the theory of estoppel focuses on representations made by the defendant or its agents to the plaintiff, which induce the plaintiff reasonably to believe that formal notice is unnecessary. For example, in *LaBriola v. Southeastern Penn. Transp. Authority* (1974), 227 Pa.Super. 305, 323 A.2d 9, the plaintiff was injured while getting off one of defendant's subway cars. The plaintiff immediately notified a transportation authority employee of the accident. Agents of the authority investigated and told the plaintiff that her claim would be settled, and that there would be no need for a suit. The plaintiff alleged she relied on defendant's representations in not filing suit. After the period for filing the tort claims notice had passed, defendant raised plaintiff's non-compliance in a motion for summary judgment. The *LaBriola* court held that plaintiff's allegations presented a jury question as to whether the authority was estopped from asserting plaintiff's noncompliance, and that, therefore, summary judgment was improper. 323 A.2d at 11 . . . .

*Allen,* 496 N.E.2d at 415.

Brown concedes that she did not file a written notice concerning her claim. Even so, she contends that the trial court erred by deciding that she had not substantially complied with the ITCA's notice require-ments. Specifically, she alleges that because P & L and its insurance agent were immediately aware of the accident that resulted in Brown's injuries, investigated the accident, settled the property damage portion of the claim, and engaged in discussions with Brown, she substantially complied with the notice provision.

■ Brown relies solely on the theory of substantial compliance. As noted above, " 'Substantial compliance focuses on the nature of the notice itself, and is concerned with the extent to which the form, content, and timing of the notice complies with the requirements of the notice statute.' " *Fowler v. Brewer,* 773 N.E.2d 858, 863 (Ind.Ct.App.2002), *trans. denied* (quoting *McConnell v. Porter Mem'l Hosp.,* 698 N.E.2d 865, 868 (Ind.Ct.App.1998), *trans. denied).* As a general rule, an evaluation of substantial compliance looks not to the information held by the governmental entity but instead to the efforts made by the claimant to notify the governmental entity of the claim. Substantial compliance was adopted to prevent the notice statute from becoming a trap for the unwary. *Galbreath,* 253 Ind. at 479–80, 255 N.E.2d at 229; *Porter v. Fort Wayne Comty. Schs.,* 743 N.E.2d 341, 344 (Ind.Ct.App.2001), *trans. denied.* As such, it allows an action to proceed when a claimant has attempted to provide notice, has fallen short of the strictures of the statute, and yet has supplied the appropriate governmental entity with sufficient information to investigate the claim. *Howard County Bd. of Comm'rs v. Lukowiak,* 810 N.E.2d 379, 382 (Ind.Ct.App.2004). Here, however, substantial compliance is not at issue because, by her own admission, Brown made no efforts to comply with the ITCA or to supply P & L with medical reports or the other necessary information to address the personal injury portion of her claim until almost two years after the accident.

In cases of sovereign immunity, it is difficult to strike the proper balance between the right of the sovereign to set the parameters of its immunity waiver and the social desirability of spreading the injured party's loss to those who are responsible for negligent actions. The ITCA attempted to strike this balance by operating as an unequivocal statement of a political subdivision's consent to be sued in tort provided certain qualifications are fulfilled. *Oshinski*, 843 N.E.2d at 544. These qualifications are not onerous. A claimant must provide notice of a claim and allow the governmental entity to approve or deny the claim.

Here, P & L knew of the accident from day one, investigated the accident, and clearly was at fault for the accident. Boyce initiated the first contact with Brown on behalf of P & L. Boyce called Brown multiple times, settled the property damage portion of the case, and expressed an interest in settling the damage portion. Boyce's notes indicate that she was waiting for and expecting details regarding the damages for Brown's personal injuries, a claim for which Boyce had P & L's authority to pay. *Appellant's App.* at 43.

Brown knew that P & L's representative, Hart, was present at the accident and had forwarded a report of that accident to Boyce. Boyce made the first contact with Brown. Brown initially was not represented by counsel and was hesitant to talk with Boyce. Brown thereafter obtained counsel and immediately received a property set-

tlement for the damage to her car. This settlement occurred without the benefit of Brown submitting a written notice. There was no indication that Brown would not be able to pursue her personal injury claim in a like manner.

While P & L knew about the accident it had none of the financial details required to settle the claim. In enacting the ITCA, the legislature could have allowed a claim to proceed where the governmental entity knew about the negligent actions and was clearly at fault. The legislature, however, enacted a statute to provide, "a claim against a political subdivision is barred unless notice is filed with the governing body of that political subdivision." IC 34–13–3–8. While this court has interpreted the notice statutes to allow substantial compliance when a claimant has taken affirmative steps to notify the governmental entity, we cannot find substantial compliance when the claimant took no steps whatsoever to comply with the notice statute.[4]

 Compliance with the notice provisions of the ITCA is a procedural precedent which the plaintiff must prove and which the trial court must determine before trial. *Davidson v. Perron*, 716 N.E.2d 29, 34 (Ind.Ct.App.1999), *trans. denied* (2000); *Lake County Juvenile Court v. Swanson*, 671 N.E.2d 429, 437 (Ind.Ct. App.1996), *trans. denied.* Indeed, when a plaintiff fails to give the required notice, the defendant has an affirmative defense of noncompliance, which must be raised in

---

4. We note another problem in the procedural posture of this case. While the ITCA sets forth the criteria for filing a claim against a political subdivision, the language of the statute makes clear that this can be a two-step process—the filing of a claim and, if denied, the filing of a lawsuit. The legislature intended that "[a] person may not initiate a suit against a governmental entity unless the person's claim has been denied in whole or

part." IC 34–13–3–13. It was the intent of the legislature that the notice of claim and the complaint be two separate documents. *Kantz v. Elkhart County Highway Dep't*, 701 N.E.2d 608, 616 (Ind.Ct.App.1998), *trans. denied.* Here, Brown made no request for the personal injury damages, and therefore there was no denial of that claim. It would appear that the case is also not in compliance with IC 34–13–3–13.

a responsive pleading to the plaintiff's complaint. *Davidson*, 716 N.E.2d at 34; *Thompson v. City of Aurora*, 263 Ind. 187, 194–95, 325 N.E.2d 839, 843 (1975). Once the defendant raises failure to comply with the ITCA's notice requirements, the burden shifts to the plaintiff to prove compliance. *Id.*

Our courts have consistently held that knowledge of claimant's injury, and even an opportunity to investigate, are insufficient to satisfy the requirement of notice. *Fowler*, 773 N.E.2d at 865. Here, Brown failed to provide P & L with notice of damages for her personal injury within 180 days of the accident. Under the facts of this case, Brown makes no showing that she initiated any contact with P & L to alert them to her claim. Brown did not substantially comply with the notice provisions of the ITCA.[5] We affirm the trial court's grant of summary judgment.

Affirmed.

MATHIAS, J., concurs.

DARDEN, J., dissents with separate opinion.

DARDEN, Judge, dissenting.

I respectfully dissent.

I recognize that there may be a "general rule" whereby we consider whether a claimant has substantially complied with the notice requirement of the ITCA by looking at "the efforts made by the claimant to notify the governmental entity of the claim." Slip Op. at 10. I also recognize that the facts indeed show that both Brown and her first attorney failed to make such efforts. However, given the purpose of the notice statute, I believe that the application of the general rule unfairly elevates form over substance in this case. I further believe that to affirm the grant of summary judgment to P & L on Brown's complaint would result in a miscarriage of justice under the circumstances presented.

In *Galbreath v. City of Indianapolis*, 253 Ind. 472, 255 N.E.2d 225 (1970), the Supreme Court of Indiana held that "the purpose of the notice statute" is "to inform the [officials of the governmental entity] with reasonable certainty of the time, place, cause and nature of the accident and the general nature and extent of the injuries so that the [governmental entity] might investigate all facts pertaining to its liability and prepare its defense, or adjust the claim." *Id.* at 253 Ind. at 477, 255 N.E.2d at 228. It is undisputed that here, the governmental entity—P & L—had all of this information well within the statutory 180–day period. Further, based on the records of P & L's insurer, reflecting information from authorized P & L personnel, "its liability" had been acknowledged from the outset. *Id.*

As we stated in *City of Tipton v. Baxter*, 593 N.E.2d 1280, 1282 (Ind.Ct.App.1992), "where the purpose" of the notice statute "has been satisfied, there may be substantial compliance." We found such substantial compliance in *Baxter*, wherein the City's insurer "had actual knowledge of the accident several days after it happened, conducted an investigation, and indicated a willingness to settle." *Id.* at 1284. The facts in *Baxter* are quite similar to those here. Within days of an accident between a vehicle driven by a City

---

5. In addition to substantial compliance, non-compliance with the notice provision has been excused in certain cases based on the theories of waiver and estoppel. *Daugherty*, 827 N.E.2d at 36; *Baxter*, 593 N.E.2d at 1282. While we have concerns that a claimant like Brown may be lulled into failure to comply with the notice statute as a result of ongoing communications and settlement negotiations with claims representatives, Brown makes no such claim here.

employee and one in which Baxter was a passenger, the City's insurer received a loss report; it assigned the matter to a claims examiner, who in turn engaged an investigator. The investigator contacted Baxter and inquired whether he "had completed his medical treatment and had all of his medical bills" and to discuss potential resolution of his claim. *Id.* at 1280. Baxter responded that he "was still having medical problems" and "was not ready to discuss resolving his claim." *Id.* at 1281. Within three months of the accident, counsel for Baxter began discussing resolution of the claim with the investigator. Within four months of the accident, the examiner processed payment by the insurer for the damage to Baxter's vehicle. However, when Baxter's counsel subsequently sought an admission of liability, the examiner advised that the insurer was "unable to honor any loss" presented by Baxter due to the failure to comply with the 180–day notice requirement. *Id.* at 1281. A complaint was filed, and the City moved to dismiss based on Baxter's failure to provide the statutory tort claim notice. The trial court denied the City's motion, and the City appealed. We held that the facts presented to the trial court supported the conclusion that there had been substantial compliance with the notice statute.

While the facts before us do not fit neatly within the "general rule" as to the "substantial compliance" doctrine with respect to the tort claims notice statute, the facts here do substantially mirror those of *Baxter*. Further, as we noted in *Baxter*, Indiana's Supreme Court has emphasized that the notice statute should not be "a trap for the unwary where" the purpose of the statute *"has in fact been satisfied."* *Galbreath*, 253 Ind. at 480, 255 N.E.2d at 229 (emphasis in original). As already stated, because P & L possessed the information which the statute mandates to be provided, the purpose of the notice statute had in fact been satisfied here. Accordingly, I would reverse the trial court's grant of summary judgment to P & L and remand to the trial court for a trial on the merits.