**Sandra WILSON, Appellant–Plaintiff,**

v.

**ROYAL MOTOR SALES, INC.,**
**Appellee–Defendant.**

No. 82A04–0309–CV–486.

Court of Appeals of Indiana.

July 20, 2004.

Rehearing Denied Oct. 18, 2004.

**134**

John D. Barker, Scott M. Cohen, Krohn & Moss, Ltd., Chicago, IL, Attorneys for Appellant.

Keith E. Rounder, Evansville, IN, Attorney for Appellee.

## OPINION

MAY, Judge.

Sandra Wilson appeals the trial court's grant of summary judgment to Royal Motor Sales, Inc. ("Royal"). Wilson raises a number of issues, which we consolidate and restate as whether the trial court erred when it determined as a matter of law that Royal had disclaimed all implied warranties. We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to Wilson, the non-moving party, follow. On May 26, 2001, Wilson purchased a 2000 Daewoo Nubria from Royal. The window sticker [1] on the car did not indicate the car was being sold "As Is", rather it indicated it

was being sold with a factory warranty. The purchase agreement [2] contained a warranty disclaimer at the bottom of the page; however, Royal did not have Wilson sign the space indicating the car was being "SOLD WITH NO WARRANTY." (Appellant's App. at 99.) Wilson's signature on the purchase agreement acknowledged that she had read the back of the purchase agreement, which included the following language: "THIS VEHICLE IS SOLD "AS IS—NOT EXPRESSLY WARRANTED OR GUARANTEED" *AND* THE SELLER HEREBY DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE." (*Id.* at 98.)

On June 14, 2001, Wilson began experiencing difficulties with the Nubria. Over the next year, the engine had an oil leak and the car had to be serviced more than once because the "check engine" light came on. The fuel tank, battery, and cam sensor all had to be replaced on separate occasions. The tires had to be rotated because they vibrated when driven at higher speeds. Water leaked into the car when it rained. The brakes made a grinding sound that required the front brake rotors to be machined and the brake pads to be replaced. Wilson also had concerns about the speedometer, fuse box, steering/suspension system, and starter. Wilson took the Nubria to Royal for repairs eight times between June 14, 2001, and October 21, 2002; however the car continued to have problems. Wilson stopped driving the car in October of 2002.[3]

---

1. The "window sticker" is captioned "BUYERS GUIDE," (Appellant's App. at 100), and the purchase agreement refers to the same document as the "window form." (*Id.* at 99.) We use those three terms interchangeably throughout this opinion.

2. The document we refer to as the "purchase agreement" is captioned "BUYERS ORDER." (Appellant's App. at 99.) We use those terms interchangeably.

3. On June 13, 2003, Wilson drove the car. Within ten miles, the check engine light became illuminated.

On October 24, 2002, Wilson notified Royal in writing she was revoking her acceptance of the Nubria. On November 12, 2002, Wilson filed a complaint alleging Royal breached its implied warranty of merchantability and she had a right to revoke her acceptance. Royal filed a motion for summary judgment. After a hearing at which Royal asserted it had disclaimed the implied warranty of merchantability, the trial court granted Royal's motion.

## DISCUSSION AND DECISION

### 1. Standard of Review

■■■ Wilson argues the trial court erred by granting Royal's motion for summary judgment. A trial court's grant of summary judgment comes to us "clothed with a presumption of validity." *Newman v. Deiter*, 702 N.E.2d 1093, 1099 (Ind.Ct. App.1998), *trans. denied* 714 N.E.2d 173 (Ind.1999), *cert. denied* 528 U.S. 931, 120 S.Ct. 329, 145 L.Ed.2d 257 (1999). Wilson, as the party appealing the trial court's decision, "must persuade [us] that error occurred." *Id.* Nevertheless, we carefully scrutinize motions for summary judgment to ensure the non-moving party was not improperly denied her day in court. *Tankersley v. Parkview Hosp., Inc.*, 791 N.E.2d 201, 203 (Ind.2003), *reh'g denied.*

■■■ When reviewing the trial court's grant of summary judgment, we apply the same standard the trial court applied. *Id.* Summary judgment is appropriate if the pleadings and evidence submitted demonstrate there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). We construe the pleadings, affidavits, and designated evidence in the light most favorable to the non-moving party, and the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Tankersley*, 791 N.E.2d at 203–04. Neither the trial court nor this court may weigh evidence or make credibility determinations when reviewing a summary judgment motion. *See Newman*, 702 N.E.2d at 1099 ("Summary judgment should not be used as an abbreviated trial."). If material facts conflict, or undisputed facts lead to conflicting inferences, summary judgment should not be granted, even if it appears the plaintiff will not succeed at trial. *Id.*

### 2. Disclaimer of Implied Warranty

Indiana has adopted the Uniform Commercial Code ("UCC"). The general purposes of the UCC are to: (1) "simplify, clarify, and modernize the law governing commercial transactions"; (2) "permit the continued expansion of commercial practices through custom, usage, and agreement of the parties"; and (3) "make uniform the law among the various jurisdictions." Ind.Code § 26–1–1–102(2). Contracting parties must perform the contract in "good faith," Ind. Code § 26–1–1–203, and the remedies provided in the UCC are to be liberally construed so "the aggrieved party may be put in as good a position as if the other party had fully performed." Ind. Code § 26–1–1–106(1).

Chapter two of the UCC–Sales regulates "transactions in goods." Ind.Code § 26–1–2–102. Under that chapter, the seller has an obligation to deliver the good in accordance with the contract and the buyer has an obligation to accept the good and pay for it in accordance with the contract. Ind.Code § 26–1–2–301.

As explained in Ind.Code § 26–1–2–314, unless negated, all contracts for the sale of goods include an implied warranty of merchantability: "Unless excluded or modified (IC 26–1–2–316), a warranty that the goods shall be merchantable is implied in a

contract for their sale if the seller is a merchant with respect to goods of that kind." Goods are merchantable if, for example, the item is "fit for the ordinary purposes for which such goods are used." Ind.Code § 26–1–2–314(2)(c).

Royal and Wilson agree the contract for the sale of the Nubria was a contract for the sale of a good by a merchant and presumably includes an implied warranty of merchantability under the UCC–Sales. However, they disagree about whether Royal effectively disclaimed that implied warranty. A seller can exclude or modify implied warranties under the following relevant conditions:

(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

(3) Notwithstanding subsection (2):

(a) Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults", or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and

(b) When the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and

(c) An implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade; . . . .

Ind.Code § 26–1–2–316.

Wilson signed a purchase agreement entitled "BUYERS ORDER." (Appellant's App. at 99.) At the bottom of that form was a box entitled: "CONTRACTUAL DISCLOSURE STATEMENT FOR USED VEHICLE ONLY." (*Id.*) Inside that contractual disclosure box were two other boxes. One box indicated the vehicle was "SOLD WITH NO WARRANTY" (*id.*) and had a space for the buyer to acknowledge the dealer was disclaiming all express or implied warranties. The second box provided:

ALL WARRANTIES, IF ANY, BY A MANUFACTURER OR SUPPLIER OTHER THAN DEALER ARE THEIRS, NOT DEALER'S, AND ONLY SUCH MANUFACTURER OR OTHER SUPPLIER SHALL BE LIABLE FOR PERFORMANCE UNDER SUCH WARRANTIES, UNLESS DEALER FURNISHES BUYER WITH A SEPARATE WRITTEN WARRANTY OR SERVICE CONTRACT MADE BY DEALER ON ITS OWN BEHALF. DEALER HEREBY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE: (A) ON ALL GOODS AND SERVICES SOLD BY DEALER, AND (B) ON ALL USED VEHICLES WHICH ARE HEREBY SOLD "AS IS—NOT EXPRESSLY WARRANTED OR GUARANTEED."

The front and back of this Order comprise the entire agreement affecting this purchase and no other agreement or understanding of any nature concerning

same has been made or entered into, or will be recognized. I hereby certify that no credit has been extented [sic] to me for the purchase of this motor vehicle except as appears in writing on the face of this agreement. I have read the matter printed on the back hereof and agree to it as a part of this order the same as if it were printed above my signature. I certify that I am of legal age, and hereby acknowledge receipt of a copy of this order.

(*id.*)

The back of the Buyer's Order contained the following relevant language:

8. *FACTORY WARRANTY:* ANY WARRANTY ON ANY NEW VEHICLE OR USED VEHICLE STILL SUBJECT TO A MANUFACTURER'S WARRANTY IS THAT MADE BY THE MANUFACTURER ONLY. THE SELLER HEREBY DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

*USED VEHICLE WHETHER OR NOT SUBJECT TO MANUFACTURER'S WARRANTY:* UNLESS A SEPARATE WRITTEN INSTRUMENT SHOWING THE TERMS OF ANY DEALER WARRANTY OR SERVICE CONTRACT IS FURNISHED BY DEALER TO BUYER, THE VEHICLE IS SOLD "AS IS—NOT EXPRESSLY WARRANTED OR GUARANTEED" *AND* THE SELLER HEREBY DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

(*Id.* at 98.)

■ The language on the back of that purchase agreement, which Wilson's signature acknowledged she had read and agreed to, was sufficiently conspicuous[4] to be a valid disclaimer of any implied warranties.[5] *See, e.g., Roberts v. Homelite Div. of Textron, Inc.,* 649 F.Supp. 1440, 1444–45 (N.D.Ind.1986) (holding language on back of invoice was sufficiently conspicuous to be a valid disclaimer under Ind. Code § 26–1–2–316(2) of the implied warranty of fitness where the relevant language was in capitalized text larger than the rest of the text on the page and contained language similar to that suggested by the statute).

Nevertheless, Wilson claims that language was ineffective due to other language in the agreement between the parties. Specifically, Wilson cites language in

---

4. In the context of the UCC, "conspicuous" means:

A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON-NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is conspicuous if it is in larger or other contrasting type or color. But in a telegram any stated term is conspicuous. Whether a term or clause is conspicuous or not is for decision by the court.

Ind.Code § 26–1–1–201(10).

5. Accordingly, we find misleading Wilson's allegation that Royal's disclaimer was invalid because it did not contain the word "merchantability" and was not "conspicuous," both of which are required by Ind.Code § 26–1–2–316. The window sticker did not conspicuously use the word "merchantability" to disclaim the implied warranty of merchantability. However, the pertinent language on the back of the purchase agreement was in bold font with capital letters, while the remainder of the text on that page was neither bold nor capitalized. In addition, the word "merchantability" was mentioned twice in those paragraphs.

the "CONTRACTUAL DISCLOSURE STATEMENT FOR USED VEHICLE ONLY" on the Buyer's Order. (Appellant's App. at 99) (emphasis original). Immediately under that heading is the following language: "The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale." (*Id.*) Wilson claims language on the window form overrode the language of the buyer's order.

The window sticker on the Nubria had the title "BUYERS GUIDE." (*Id.* at 100.) That sticker indicated there were two possibilities regarding the warranty status of the vehicle, and next to each of those possibilities was a box for the dealer to indicate which applied. First, the vehicle could be sold "AS IS—NO WARRANTY." (*Id.*) Immediately underneath that "AS IS" language was further explanation: "YOU WILL PAY ALL COSTS FOR ANY REPAIRS. The dealer assumes no responsibility for any repairs regardless of any oral statements about the vehicle." (*Id.*)

Second, the car could be sold with a "WARRANTY." (*Id.*) Immediately underneath that "WARRANTY" language was a space for the dealer to indicate whether the warranty was "FULL" or "LIMITED." (*Id.*) Additional language allowed the dealer to indicate what percentages of labor and parts were covered during the warranty period. The document indicates the buyer may "[a]sk the dealer for a copy of the warranty document for a full explanation of warranty coverage, exclusions, and the dealer's repair obligations. Under state law, 'implied warranties' may give you even more rights." (*Id.*)

Royal had checked the box next to "WARRANTY." (*Id.*) However, it had not checked a box indicating whether the warranty was "FULL" or "LIMITED," nor had it indicated what percentage of costs for parts or labor the dealer would cover. (*Id.*) Rather, below those preprinted options, Royal had typed the following language:

BALANCE OF FACTORY WARRANTY

MANUFACTURER'S WARRANTY STILL APPLIES. The manufacturer's original warranty has not yet expired on this vehicle. Consult the manufacturer's warranty booklet for details as to warranty coverage, service location, etc.

The dealership itself assumes no responsibility for any repairs regardless of any oral statement about the vehicle. All warranty coverage comes from unexpired manufacturer's warranty.

Original Warranty * * 5 Years or 60,000 Miles

(*Id.*)

Finally, below that language, Royal had checked another pre-printed option, which provided:

SERVICE CONTRACT. A service contract is available at an extra charge on this vehicle. Ask for details as to coverage, deductible, price, and exclusions. If you buy a service contract within 90 days of the time of sale, state law "implied warranties" may give you additional rights.

(*Id.*)

Wilson claims the window sticker contradicts the language in the purchase agreement because Royal had not marked the box on the window sticker indicating the Nubria was being sold "As Is."[6] The

---

**6.** In addition, we note the remainder of the "As Is" provision on the window sticker provided "AS IS—NO WARRANTY." (Appellant's App. at 100.) As the car remained

flaw in Wilson's reasoning is the purchase agreement also did not indicate the Nubria was being sold without any warranty. Rather, the purchase agreement indicated that if the car was being sold with a "factory warranty," that warranty was made by the manufacturer only and did not bind the dealer unless the parties signed an additional "dealer warranty or service contract." (*Id.* at 98) (capitalization removed). If no additional contract was signed, then the dealer disclaimed all express or implied warranties, including the implied warranty of merchantability. The language on the window sticker, while perhaps ineffective as a disclaimer of implied warranties if considered alone, did not contradict the language in the purchase agreement.

Accordingly, we decline Wilson's invitation to reweigh the evidence. *See, e.g., DeVoe Chevrolet–Cadillac, Inc. v. Cartwright,* 526 N.E.2d 1237, 1240 (Ind.Ct.App. 1988) (declining to override dealer's disclaimer of implied warranties based on alleged express warranty when record contained no evidence dealer made any express warranty). The trial court did not err when it granted Royal's motion for summary judgment.

Affirmed.

SULLIVAN, J., and VAIDIK, J., concur.

under a factory warranty, the box Wilson claims Royal should have checked would have been inaccurate.