Drew DICKERSON and Donna Dickerson, Appellants–Plaintiffs,

v.

Donna STRAND and Gloria German, Appellees–Defendants.

No. 54A01–0807–CV–334.

Court of Appeals of Indiana.

April 24, 2009.

Rehearing Denied June 24, 2009.

James E. Ayers, Wernle, Ristine & Ayers, Crawfordsville, IN, Attorney for Appellant.

C. Rex Henthorn, J. Lamont Harris, Henthorn, Harris & Weliever, Crawfordsville, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE [1]

Appellants–Plaintiffs, Drew and Donna Dickerson (collectively, the Dickersons),

---

1. In their opening brief, the Dickersons argue that Special Judge J. Jeffrey Edens lacks subject matter jurisdiction over this case. The Dickersons filed their Complaint in Montgomery Superior Court I, but they quickly asked for a change of judge. On June 4, 2004, Judge Steve David of the Boone Circuit Court accepted his appointment as special judge. However, in the summer of 2007, Judge David was called to active duty with the United States Army. As such, the Indiana Supreme Court appointed Mr. Edens judge *pro tempore* of the Boone Circuit Court. In their brief, the Dickersons suggest that Judge *Pro Tempore* Edens does not have subject matter jurisdiction in this case because the limited authority granted him by the Indiana Supreme Court did not extend to the cases in which Judge David was serving as special judge. In response, Strand and German filed an appendix containing the actual order from the Indiana Supreme Court, which specifically stated that Judge *Pro Tempore* Edens, if not otherwise disqualified, "may hear those cases in which Judge David is serving as special judge." (Appellees' App. p. 7). Seemingly appeased by this reminder, the Dickersons' counsel, who no doubt had access to this information before filing his opening brief,

appeal from the trial court's grant of summary judgment in favor of Appellees–Defendants, Donna Strand (Strand) and Gloria German (German), on the Dickersons' claim for fraud arising from the sale of a house.

We affirm.

## ISSUE

The Dickersons present several issues for our review, which we consolidate and restate as the following single issue: Whether the Dickersons had the right to rely on representations by Strand and German as to the quality of the house when the Dickersons had a reasonable opportunity to inspect the house for themselves.

## FACTS AND PROCEDURAL HISTORY

In 1995, Strand and German purchased a house in Ladoga, Indiana. At that time, S S Pest Control inspected the house for visual evidence of infestation and damage caused by termites or other wood-destroying organisms. S S Pest Control's inspection report noted visual evidence of active termite infestation in the "crawl space north foundation wall and base sill plate." (Appellants' App. p. 140). The seller paid to have S S Pest Control treat the house.

In early 2000, Strand and German wanted to sell the house and hired Central Indiana Home Inspections to inspect it. In its report, under the heading "Major Structural Defects," Central Indiana Home Inspections stated, "Some floor joists & the box sill on the north side by the deck have termite damage. Some re-enforcement has been done to the joists but not the box sill." (Appellants' App. p. 162).

On March 17, 2000, after having toured the house "a couple of times" with Strand and German's agent, the Dickersons signed an agreement to purchase the house. (Appellants' App. p. 129). Under "Further Conditions," the agreement provided, "Sellers to repair items listed on inspection report from Central Indiana Home Inspections/Phil Smith, re-enforcement of sill plates." (Appellants' App. p. 183). The agreement also gave the Dickersons the right to have the house inspected and to terminate the contract if their inspection revealed major defects that Strand and German were unable or unwilling to remedy.

Later in March of 2000, Strand and German hired Jim Dawson (Dawson) to repair the termite damage disclosed in the Central Indiana Home Inspections report. Dawson described his work as follows: "I saw some termite damage in that north floor system, and the best I can remember, I put a couple of four by four supports under those walls to try to help keep them from moving downward, like collapsing because of the weak perimeter joist." (Appellants' App. p. 202). He provided Strand and German a bill for $92.00 for "[t]otal material and labor for raising a termite damaged section of floors and wall on the north foundation wall[.]" (Appellants' App. p. 186). Strand gave Dawson a check for the bill.

On May 19, 2000, the date of closing, Strand signed a Seller's Residential Real Estate Sales Disclosure form. In the row asking, "Are there any structural problems with the buildings?" Strand had checked the "NO" box. (Appellants' App. p. 179). Also at the time of closing, all of the parties signed a Purchaser's Response Regarding Inspection that stated that Dawson had "reinforced the floor and wall on the North of the property." (Appellants' App. p. 187). The Dickersons never had their own inspection done.

did not return to this argument in his reply brief. We consider this matter settled.

In October of 2003, the Dickersons hired Rob Wethington (Wethington) to replace the siding on the house. Wethington uncovered significant termite damage. Specifically, he determined that "the sill around the majority of the building had been completely destroyed by termite damage[.]" (Appellants' App. p. 190). Wethington believed that the damage was "old" and "could not possibly have occurred after March 17, 2000." (Appellants' App. p. 190). Wethington later swore in an affidavit that, after discovering the damage, he spoke with Dawson, who said that he was only asked by Strand and German "to prop up the floor, and that he had never been given the inspection report or told to reinforce or replace the beams or joints." (Appellants' App. p. 191). Wethington's affidavit further provided:

7. I found that no repairs had been made at all, simply the props, no new wood had been installed and no nailing or scabbing had been done and the entire area was structurally worthless.

8. In my opinion as a contractor, this area had not in any sense "been repaired" but had simply been propped to prevent immediate collapse while leaving the structural failure in place.

(Appellants' App. p. 191).

On April 12, 2004, the Dickersons filed a Complaint against Strand and German alleging, among other things, fraud.[2] The Dickersons claimed that Strand and German "falsely represented . . . that the property had not suffered structural termite damage" and that the Dickersons had relied upon that representation in purchasing the house. (Appellants' App. p. 51). On March 16, 2007, Strand and German filed a motion for summary judgment. On May 23, 2008, the trial court issued an order granting summary judgment in favor of Strand and German.

The Dickersons now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION [3]

On appeal, the Dickersons argue that the trial court erred in granting summary judgment in favor of Strand and German on the Dickersons' claim for fraud. In reviewing summary judgment rulings, we apply the same standard as the trial court. *Kopczynski v. Barger*, 887 N.E.2d 928, 930 (Ind.2008). We affirm summary judgment unless there is a genuine issue as to a material fact or the moving party is not entitled to a judgment as a matter of law. *Id.* All facts and reasonable inferences from them are to be construed in favor of the nonmoving party. *Id.*

Before turning to the merits, we pause to note our concern that the trial court, in its order granting summary judgment, made "Findings of Fact" on several factual issues that appear to us to have been the subject of genuine dispute. For example, the trial court found that Dawson "repaired" the damage in question, but whether Dawson's work in this case amounted to a total "repair" of the damage seems to be a classic question of fact, especially since his bill was for only $92.00 and structural damage still existed after his work. (Appellants' App. p. 11). Likewise, the trial court found that "[t]he ter-

2. The Dickersons also brought claims of breach of warranty and criminal deception. However, the trial court granted summary judgment in favor of Strand and German on those claims, and the Dickersons do not challenge those rulings on appeal.

3. Indiana Appellate Rule 46(A)(7) provides that the Summary of Argument in a brief should contain a "succinct" statement of the arguments made in the body of the brief. The "summary" of the Dickersons' argument is three pages long and does little to help focus our review.

mite damage would not have been discovered had it not been necessary to remove the old siding from the house to install the new siding." (Appellants' App. p. 11). But that finding is contradicted by evidence that Central Indiana Home Inspections discovered the damage without removing any siding. At the summary judgment stage, it is not the role of the trial court to weigh evidence or judge the credibility of witnesses and then make findings of fact. *Wilson v. Royal Motor Sales, Inc.*, 812 N.E.2d 133, 135 (Ind.Ct. App.2004), *reh'g denied.* Where the evidence is in conflict, or undisputed facts lead to conflicting inferences, summary judgment should not be granted, even if it appears that the nonmovant will not succeed at trial. *Id.* In short, "[s]ummary judgment should not be used as an abbreviated trial." *Id.*

 As for the Dickersons' contentions, to establish a cause of action for fraudulent misrepresentation, the plaintiff must demonstrate: (1) that the defendant made false statements of past or existing material facts; (2) that the defendant made such statements knowing them to be false or recklessly without knowledge as to their truth or falsity; (3) that the defendant made the statements to induce the plaintiff to act upon them; (4) that the plaintiff justifiably relied and acted upon the statements; and (5) that the plaintiff suffered injury. *Verrall v. Machura*, 810 N.E.2d 1159, 1162 (Ind.Ct.App.2004), *trans. denied.* The Dickersons contend that Strand and German made fraudulent statements in two different documents: in the Seller's Residential Real Estate Sales Disclosure form, where they indicated that the house had no structural problems at the time of closing, and in the Purchaser's Response Regarding Inspection, where they indicated that Dawson had re-enforced the floor and wall on the north side

of the house. But we need not decide whether Strand and German's representations were fraudulent because, under Indiana law, the Dickersons had no right to rely on those representations.

As recently as three years ago, we stated that "a purchaser of property has no right to rely upon the representations of the vendor of the property as to its quality, where he has a reasonable opportunity of examining the property and judging for himself as to its qualities." *McCutchan v. Blanck*, 846 N.E.2d 256, 265 (Ind.Ct.App. 2006). We traced this rule back to 1881, when it was first stated by our supreme court in *Cagney v. Cuson,* 77 Ind. 494, 1881 WL 6689 (1881). In that case, the plaintiff alleged that the defendant made certain fraudulent statements in order to induce the plaintiff to buy land and farm equipment. The plaintiff had "a suitable opportunity of examining both the lands and the personal property" but failed to do so. *Id.* at 497, 1881 WL 6689 *2. Our supreme court held that, even as to *fraudulent* representations operating as an inducement to the sale or exchange of property, "the purchaser has no right to rely upon the representations of the vendor as to the quality of the property, where he has a reasonable opportunity of examining the property and judging for himself as to its qualities." *Id.* at 497, 1881 WL 6689 *2. As such, the court reversed the judgment in favor of the plaintiff. *Id.* at 494, 1881 WL 6689*2.

Though we had to dust it off, *Cagney* is still good law, and the Dickersons offer us no way around it. The Dickersons, like the plaintiff in *Cagney,* had a reasonable opportunity to inspect the house. In fact, they specifically contracted for the right to inspect the house. The fact that the Dickersons did not actually inspect the house is irrelevant; under *Cagney,* it is the opportunity to inspect that matters. We en-

courage our supreme court to reevaluate the social value of a rule allowing a seller of property to lie with impunity as long as the prospective buyer had a reasonable opportunity to inspect the property. But until then, we are bound by that rule. Therefore, we hold that the trial court properly granted summary judgment in favor of Strand and German.[4]

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not err in granting summary judgment in favor of Strand and German on the Dickersons' fraud claim.

Affirmed.

DARDEN, J., concurs.

VAIDIK, J., dissents with separate opinion.

VAIDIK, Judge, dissenting.

I respectfully dissent. However, I wholeheartedly join with my colleagues in asking that our Supreme Court examine the common law rule that a residential real estate buyer may not rely upon a seller's assertions regarding the property where the buyer has the reasonable opportunity to inspect the property in light of Indiana's disclosure form statute.

The majority is correct that Indiana common law long placed the burden upon buyers of real property to inspect the property and bear the risk when they fail to do so:[5] "It is well settled that 'a purchaser of property has no right to rely upon the representations of the vendor of the property as to its quality, where he has a reasonable opportunity of examining the property and judging for himself as to its qualities.'" *McCutchan v. Blanck,* 846 N.E.2d 256, 265 (Ind.Ct.App.2006) (quoting *Kashman v. Haas,* 766 N.E.2d 417, 422 (Ind.Ct.App.2002)). *See also Shepherd v. Goben,* 142 Ind. 318, 39 N.E. 506, 507 (1895), *reh'g denied; Cagney v. Cuson,* 77 Ind. 494, 497 (1881); *Pennycuff v. Fetter,* 409 N.E.2d 1179, 1180 (Ind.Ct.App.1980); *Anderson Drive–In Theatre, Inc. v. Kirkpatrick,* 123 Ind.App. 388, 110 N.E.2d 506, 508 (1953). Nevertheless, in some cases, we have recognized that a seller has the duty to disclose material facts about the property "where the buyer makes inquiries about a condition on, the qualities of, or the characteristics of the property," *Fimbel v. DeClark,* 695 N.E.2d 125, 127 (Ind.Ct.App.1998), *trans. denied,* and that, once a seller undertakes to disclose facts within his or her knowledge, the seller must disclose the whole truth, *Thompson v. Best,* 478 N.E.2d 79, 84 (Ind.Ct.App. 1985) (citing *Ind. Bank & Trust Co. v.*

---

**4.** We might have reached a different result if the Dickersons had directed us to evidence tending to show that a reasonable inspection of the house would not have revealed the termite damage in question. In *Shepherd v. Goben,* 142 Ind. 318, 322, 39 N.E. 506, 507 (1895), a case written shortly after *Cagney,* our supreme court emphasized the importance of a jury instruction that provided that "the vendor could not defeat a recovery by showing an inspection of the land, if it appeared that an inspection would not disclose the deceit in the alleged false representations[.]" Here, it is true that the termite damage was partially concealed by the siding on the house. Nonetheless, given the Dickersons' prior knowledge of the extensive termite

damage, a reasonable inspection on their part would have no doubt included an inspection of the crawlspace, much like the inspection performed by Central Indiana Home Inspections before Strand and German sold the house. Such an inspection would have revealed Dawson's re-enforcement job and the continued existence of structural termite damage.

**5.** In 1972, our Supreme Court expressly held that the rule of *caveat emptor* does not apply to purchases of residential real estate from a builder-vendor. *Theis v. Heuer,* 264 Ind. 1, 280 N.E.2d 300, 306 (1972).

*Perry,* 467 N.E.2d 428, 431 (Ind.Ct.App. 1984)), *reh'g denied.*

Against this backdrop of difficult-to-reconcile approaches, in 1993 the Indiana Legislature enacted Indiana Code §§ 24–4.6–2–1 to –13, creating a statutory obligation for sellers of certain residential real estate to complete disclosure forms informing prospective buyers of certain types of defects in the property. *See* P.L. 209–1993, Sec. 1 (1993). Later recodified at Indiana Code §§ 32–21–5–1 to –13, this legislation requires sellers of certain residential real estate[6] to provide prospective buyers with a written form disclosing known conditions of the property's foundation, mechanical systems, roof, structure, water and sewer systems, and any other appropriate components required by the Indiana Real Estate Commission. I.C. § 32–21–5–7. In other words, this statute requires disclosure of the kinds of defects that will most significantly affect the value and use of a home. While Indiana Code § 32–21–5–9 provides that "[a] disclosure form is not a warranty by the owner ... and the disclosure form may not be used as a substitute for any inspections or warranties that the prospective buyer or owner may later obtain[,]" sellers nonetheless have the affirmative duty to disclose relevant conditions about which they are aware. I.C. § 32–21–5–7(1) (requiring disclosure of "known" conditions). Further, a seller must affirm the representations made in the disclosure form at the time of closing, which leaves no opportunity for the buyer to subsequently inspect the property. Ind.Code § 32–21–5–12(a). And our Legislature expressly contemplated that the disclosure form statute would create liability for sellers under certain circumstances:

> The owner is not liable for any error, inaccuracy, or omission of any information required to be delivered to the prospective buyer under this chapter if:
>
> (1) the error, inaccuracy, or omission was not within the actual knowledge of the owner or was based on information provided by a public agency or by another person with a professional license or special knowledge who provided a written or oral report or opinion that the owner reasonably believed to be correct; and
>
> (2) the owner was not negligent in obtaining information from a third party and transmitting the information.

Ind.Code § 32–21–5–11. Thus, for transactions covered by § 32–21–5–1, Indiana's disclosure form statute abrogates the common law rule that buyers cannot rely upon sellers' representations regarding the absence of defects in those things included in Indiana Code § 32–21–5–7(1) and places the onus on a seller to refrain from knowingly making misrepresentations about those conditions.

Since the legislative creation of the disclosure form requirement, cases from different panels of this Court have analyzed a seller's liability under it in several ways. In *Reum v. Mercer,* 817 N.E.2d 1267, 1272

---

6. My reading of the disclosure form statute should not be construed to open a floodgate of litigation. The disclosure form requirement "applies only to a sale of, an exchange of, an installment sales contract for, or a lease with option to buy *residential real estate that contains not more than four (4) residential dwelling units.*" Ind.Code § 32–21–5–1(a) (emphasis added). A number of different kinds of residential real estate transfers are excluded, including the purchase of a new home that has not yet been inhabited. I.C. § 32–21–5–l(b)(8). Further, the disclosure requirement is limited to those components of a home that most affect its habitability. Ind. Code § 32–21–5–7(1). Neither will my reading of the statute discourage buyers from inspecting property before a closing. After all, most buyers do not purchase a home with an eye toward creating legal problems.

(Ind.Ct.App.2004), and *Verrall v. Machura*, 810 N.E.2d 1159, 1162–64 (Ind.Ct.App. 2004), *trans. denied,* we recognized a buyer's statutory cause of action in cases where the buyer alleges that a seller made misrepresentations on the form, and we did not deem the seller's resulting liability affected by the buyer's traditional common law duty to inspect. On the other hand, in *Kashman v. Haas,* 766 N.E.2d 417, 422 (Ind.Ct.App.2002), the panel held that a seller was precluded from liability based upon the buyer's common law duty to inspect the property and the bar upon buyers relying upon sellers' representations, even though the panel also wrote that, "Because Buyers failed to designate evidence demonstrating that Sellers had actual knowledge of termite damage, Ind[iana] Code § [32–21–5–11] excuses Sellers from any liability based upon their answers on the Disclosure Form." *Kashman,* 766 N.E.2d at 423. Finally, in *McCutchan,* 846 N.E.2d at 264–65, a panel of this Court cited the disclosure form statute but did not reach the question of whether the sellers had actual knowledge of a defect, instead denying relief to the buyers based upon the buyers' duty to inspect the property.

From my reading of Indiana Code §§ 32–21–5–1 to –13, I agree with *Reum,* 817 N.E.2d at 1272, and *Verrall,* 810 N.E.2d at 1162–64, that the relevant question now is whether the seller of covered residential real estate *actually knew* about the property's defects when filling out the disclosure form. Pursuant to the plain language of Indiana Code § 32–21–5–11, this should be the relevant inquiry in evaluating the sellers' liability in the case before us. A contrary reading of Indiana

Code § 32–21–5–11 would contradict the Legislature's intent to protect buyers, in limited circumstances, as they purchase what is typically one's largest and most important asset: a home. Because the record in this case reflects a genuine issue of fact regarding whether Donna Strand and Gloria German, the sellers, had actual knowledge of the structural damage to the property at the time they completed the disclosure form,[7] I believe that summary judgment in favor of the sellers was improperly granted. I would reverse the trial court's grant of summary judgment and remand for further proceedings.

---

7. The record reveals that although Strand and German were made aware of termite damage to the house through an inspection performed by Central Indiana Home Inspections, and the professional inspector listed this damage under the heading "Major Structural Defects," the only repairs made by Strand and German after this inspection cost $92. Appellant's App. p. 162, 186.