# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 29 2018, 8:50 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Jeffrey Alan Hokanson
Maggie L. Smith
Darren A. Craig
Jaclyn M. Flint
Frost Brown Todd LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

C. Gregory Fifer
Jeffersonville, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Duke Energy Indiana, LLC,

*Appellant-Defendant,*

v.

J & J Development Company, LLC,

*Appellee-Plaintiff.*

March 29, 2018

Court of Appeals Case No.
10A04-1605-PL-1084

Appeal from the Clark Circuit Court.
The Honorable Steven M. Fleece,
Senior Judge.
Trial Court Cause No.
10C04-1508-PL-91

**Friedlander, Senior Judge**

[1] Duke Energy Indiana, LLC (Duke) appeals from the trial court's order granting partial summary judgment in favor of J & J Development Company, LLC (J &

J).  J & J raises a cross-appeal issue based upon the trial court's order.  We reverse and remand.

[2]     On January 17, 1956, Jacob and Agnes Yochem granted to Public Service of Indiana, Incorporated (PSI), an electric transmission line easement that was recorded in Clark County on January 27, 1956.  The text of the easement reads in pertinent part as follows:

> Grantors hereby grant unto [PSI], an Indiana corporation, and its successors and assigns, Grantee, the perpetual right, privilege, easement and authority to enter upon the real estate hereinafter described and, now or in the future, there to construct, erect, maintain, operate, inspect, patrol, repair, replace, extend, renew and/or remove two (2) lines of metal towers supporting one or more electric transmission lines, together with the anchors, guys, wire, conductors, cables, insulators, appurtenances, and other appliances, fixtures and apparatus attached thereto, for the supply, transmission, distribution and/or delivery of electrical energy to the public in general, for light, heat, power, telephone and/or other purposes . . . . (a three hundred foot wide easement, legal description omitted)[.]
>
> In constructing said lines, Grantee shall have the right to determine the exact location in said real estate where the supportive towers of each of said lines are to be located; to erect, construct and maintain the necessary substructures for said towers and to mount upon and string between said towers, the wires, cables, conductors, cross-arms, insulators, transformers, lightning arresters, disconnect switches, and other apparatus and equipment comprising, or reasonably appurtenant to, said electric transmission lines.
>
> The Grantors reserve the use of the above described land not inconsistent with this grant, with the right to extend fences across the same.  The Grantee shall not fence said land, but may put

gates in any fences now or hereafter built thereon by the Grantors. Access to the above described land by way of established roads, lanes or driveways is hereby given.

The Grantee may at any and all times trim, retrim, cut down or remove, without further payment, trees, bushes, saplings or other obstructions upon or extending over said land, so far as may reasonably be necessary in the construction, operation and maintenance of said lines.

The Grantees shall and will indemnify and save the Grantors harmless from and against any and all damages, injuries, losses, claims, demands or costs proximately caused by the fault, culpability, or negligence of the Grantee in the construction, erection, maintenance, operation, repair or removal of said electric transmission lines and the structures and appurtenances connected therewith.

Any damages to crops, fences, gates, drains, ditches or buildings of the Grantor done by the Grantee in the erection, repair, replacement or renewal of said towers, (illegible) wires, cables or equipment shall be promptly repaired, replaced or paid for by the Grantee, provided a claim thereof is presented with the Grantee at its General Office within thirty (30) days after such damages occur.

Appellant's App. Vol. II, pp. 23-24. A second easement was granted to PSI by Henry G. and Nettie E. Zipp dated October 2, 1956, and was recorded sometime in October 1956. The rights granted by the Zipps appear to be consistent with the rights granted by the Yochems.[1]

_____

[1] The transmission line right of way includes a small, triangular portion within the Zipp easement, with the majority of the transmission line right of way lying within the Yochem easement. Appellant's App. Vol. VI, p. 34 (Affidavit of Brian K. Lundy). We will refer to the Yochem and Zipp easements collectively as "the easement" or "the recorded easement."

[3] Duke, a public utility serving the southern two-thirds of Indiana and elsewhere, is the successor-in-interest to PSI and holds the dominant interest under the easement. There is no evidence in the record to suggest that Duke, or any other successor-in-interest since PSI, has relocated the towers from their original placement within the easement, but instead, has maintained and operated the towers in a manner consistent with the terms of the easement.

[4] In 2013, J & J, a limited liability company which has its principal office in Clark County, retained David R. Blankenbeker (Blankenbeker),[2] a certified surveyor, to prepare plats for two residential subdivisions–Waters of Millan and Plains of Millan. The Plains of Millan subdivision is adjacent to the easement. Blankenbeker has prepared hundreds of residential subdivision plats for tracts of land in the area and has designed plats for property encumbered by utility easements. The real property is located along State Road 60, and the two parcels total, in the aggregate, 118.97 acres. The infrastructure/improvements at issue here involve those associated with the Plains of Millan residential subdivision.

[5] Blankenbeker designed a primary plat for an R-1 district, and the Clark County Plan Commission (CCPC) approved it after the public hearing held on January 8, 2014. On March 12, 2014, the petition of Dr. Joselito and Carla Millan requesting to rezone the property from A-1 Agricultural to R-1 Single Family

---

[2] Blankenbeker was also the duly elected Clark County Surveyor. He abstained from voting on issues involving the property at public hearings in the county addressing such.

Residential was approved by the CCPC and was recommended to the Clark County Board of Commissioners (CCBC). The CCBC approved the rezoning on March 27, 2014. The secondary, or final, plat was approved by the CCPC on June 11, 2014.

[6]     J & J acquired the property from the Millans on July 28, 2014, and now holds the servient interest under the easement. The final plat was recorded on September 2, 2015.

[7]     In furtherance of developing the Plains of Millan, J & J has established either wholly or partly within the easement, the following infrastructure/improvements: (1) a graded roadway designated as Palermo Street, which J & J plans to pave, curb and gutter to connect the landlocked subdivision with State Highway 60; (2) underground utilities consisting of a sanitary sewer line of the Town of Sellersburg (the Town), the water line of Silver Creek Water Company, the electric line of Clark County REMC, the natural gas line of Vectren Energy and the cables of Insight Cable Company and AT&T; (3) a fire hydrant which rises less than four feet above the ground and a few electric termination boxes which rise approximately three feet above the ground; (4) two storm water detention basins designed to contain storm water runoff temporarily and empty at a controlled rate within hours, excavated to a maximum depth of eleven feet; and, (5) five concrete storm water culverts at ground level. *Id.* at 25.

[8]     Regarding the sanitary sewer service to be provided to the homes in the Plains of Millan, an extension of the collection system owned and operated by the Town was required to connect to the Town's system. To accomplish that, J & J needed to install a small diameter pressure main within a sanitary sewer easement running through Duke's easement to connect two lift stations owned and operated by the Town. The Town issued to J & J a sanitary sewer construction permit which included a condition requiring J & J to obtain Duke's approval prior to construction of the main.

[9]     A principal of J & J, Jeff Corbett (Corbett), contacted Duke as requested by the Town to notify Duke about the Plains of Millan development and to inform Duke that J & J needed to extend a sanitary sewer line through the Duke easement. Gary McNamee (McNamee), an asset protection specialist employed by Duke, corresponded by email with Corbett, expressing concerns about perceived encroachments caused by the infrastructure/improvements and alleging that they were in violation of Duke's easement rights under the recorded easement and a Duke guidelines and restrictions document.

[10]    Duke had generated a document entitled "Electric Transmission Right-Of-Way Guidelines/Restrictions Valid For Ohio, Indiana and Kentucky." *Id.* at 54. McNamee sent a copy of this document, reflecting that it had been revised on November 20, 2014, to Corbett. The document contained the statement that it was developed to provide Duke's interpretation of and answers to the most frequently asked questions about how property owners–presumably those with a servient interest–may use Duke's electric transmission rights of way. The

document further declared the authority to change the list of restrictions at any time without notice. Duke further took the position in the document that all activity by others within a Duke easement was required to receive prior review and approval by a Duke asset protection right-of-way specialist.

[11] Blankenbeker and McNamee attempted to resolve the dispute between Duke and J & J prior to litigation. Duke maintained that the infrastructure/improvements constituted impermissible encroachments on its easement and insisted that J & J remove them. Duke asserted its position was supported by both the recorded easement and Duke's guidelines/requirements. J & J, on the other hand, maintained that the infrastructure/improvements did not violate, interfere with, or obstruct Duke's enjoyment of its rights under the easement.

[12] J & J filed a verified complaint against Duke in which it asserted claims for inverse condemnation and sought declaratory and injunctive relief. Duke filed its answer, affirmative defenses, and counterclaim on August 24, 2015. In its counterclaim, Duke sought the following: (1) a declaratory judgment concerning the validity and scope of its easements and J & J's interference with those rights; (2) an alternative claim for a declaratory judgement concerning the validity and scope of a prescriptive easement and J & J's interference with those rights; and, (3) injunctive relief to enforce easement rights and damages.

[13] J & J filed a First Amended Verified Complaint on September 22, 2015. The amendment added several defendants so they could answer as to their interests.[3] This complaint also asked for the following: (1) a declaratory judgment that J & J's construction does not unreasonably interfere with Duke's use of its easement; (2) a permanent injunction prohibiting Duke from requiring the removal of construction in Duke's easement; (3) damages for Duke's alleged tortious interference with J & J's contractual and business relationships; (4) damages under the Indiana frivolous litigation statute; and, (5) an alternative claim for inverse condemnation if the trial court required J & J to remove the construction in Duke's easement.

[14] On November 16, 2015, J & J filed a motion for partial summary judgment on the issues of declaratory and injunctive relief. After the designation of evidence by the parties, the trial court granted J & J's motion for partial summary judgment on its claim for declaratory relief. Although Duke contends in its opening brief that the trial court denied J & J's request for summary judgment as to injunctive relief, Appellant's Br. at 6, the trial court declined to rule on that issue stating in its order as follows:

> The court finds that issues relevant to Injunctive Relief has [sic] so far taken a back seat to the issues relevant to Declaratory Judgment. The court finds it would benefit from a further

---

[3] The trial court found that the main controversy was between Duke and J & J. The additional defendants' interests can be summarized as either neutral or supportive of J & J's position. Those defendants seek to avoid liability in the event the infrastructure needs to be removed. We note that under Indiana Trial Rule 17 (A), however, "a party of record . . . shall be a party on appeal." Ind. Tr. Rule 17(A).

hearing specifically on the issue of Injunctive Relief. The court will schedule such hearing upon motion of either party.

Appellant's App. Vol. II, p. 34.

[15] Duke filed its notice of appeal from the trial court's order. J & J filed a motion to dismiss the appeal or, in the alternative, confirmation from this Court that the trial court's order was final and appealable as a matter of right. We dismissed the appeal, but later granted Duke's petition for rehearing on the dismissal. The appeal was reinstated, we resumed jurisdiction and stayed the trial court proceedings pending the outcome of the appeal.

[16] Duke raises several issues, the following of which is dispositive:

> 1. Did the trial court apply an incorrect legal standard when granting partial summary judgment in favor of J & J on its request for a declaratory judgment?

Duke responds to J & J's cross-appeal issue regarding injunctive relief with a dispositive argument, which we restate as follows:

> 2. Does the Court of Appeals have jurisdiction over the issue of injunctive relief when the issue has not been decided and reduced to a final appealable judgment?

# 1.

[17] Duke challenges the trial court's grant of partial summary judgment, contending that the trial court made credibility determinations and decided genuine issues of material fact. "The standard of review for a partial summary judgment is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows that there is no genuine issue of

material fact and that the moving party is entitled to judgment as a matter of law." *Ballard v. Lewis*, 8 N.E.3d 190, 193 (Ind. 2014). "Where the challenge to the trial court's summary judgment ruling presents only legal issues, not factual ones, the issues are reviewed *de novo*." *Id.* "The party seeking summary judgment must demonstrate the absence of any genuine issue of fact as to a determinative issue, and only then is the non-movant required to come forward with contrary evidence." *Jarboe v. Landmark Cmty Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind. 1994).

[18]   When a trial court rules on a motion for summary judgment, not only are all facts to be construed in favor of the non-moving party but also all reasonable inferences to be drawn from those facts. *Auto-Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279 (Ind. 2006). A trial court must accept as true those facts alleged by the non-moving party and resolve all doubts against the moving party. *Id.*

[19]   In this case, the trial court entered detailed findings of fact and conclusions of law in support of its judgment. Neither is required nor prohibited in the summary judgment context. *Knighten v. East Chicago Housing Auth.*, 45 N.E.3d 788 (Ind. 2015). While specific findings aid appellate review of a summary judgment ruling, they are not binding. *City of Gary v. Indiana Bell Tel. Co., Inc.*, 732 N.E.2d 149 (Ind. 2000). A trial court's findings and conclusions supporting its summary judgment order offer insight into the rationale of the trial court's judgment. *Winchell v. Guy*, 857 N.E.2d 1024 (Ind. Ct. App. 2006).

[20] Here, it is evident from the trial court's order that the trial court, in determining whether there was a genuine issue of material fact, made credibility determinations involving issues that were in dispute. At the summary judgment stage of litigation, it is not the trial court's role to weigh evidence or judge the credibility of witnesses and then make findings of fact. *Dickerson v. Strand*, 904 N.E.2d 711 (Ind. 2009). Where the evidence is in conflict, or undisputed facts lead to conflicting inferences, summary judgment should not be granted, even if it appears that the non-movant will not succeed at trial. *Id.* Summary judgment proceedings should not be used as an abbreviated trial. *Id.*

[21] In Finding of Fact Number 17, the trial court, when referring to the affidavit of Duke employee Martin Dickey, states, "The court specifically finds this assertion not credible. . . ." Appellant's App. Vol. II, p. 27. Dickey had stated in his affidavit that the intersection created for ingress and egress related to the subdivision affected Duke's ability to stage a laydown necessary for repairs in the event of outages. Appellant's App. Vol. VI, pp. 40-49. The trial court found that "The road makes access to this [nearby] flat field easier, not more difficult. The field is obviously a more appropriate laydown or staging area than the intersection. . . ." Appellant's App. Vol. II, p. 27.

[22] Additionally, in its conclusions of law, the trial court states, "The **trier of fact** is satisfied that Developer acted in good faith in refraining from placing anything in the easement that might practically encroach upon Duke Energy's rights as the owner of the Dominant interest or endanger the public." *Id.* at 33 (emphasis added).

[23] These findings and conclusions lead us to decide that the trial court did not apply the correct legal standard for purposes of summary judgment,[4] which required the determination whether there was a genuine issue of material fact. On this basis the matter should be remanded to the trial court.

[24] Remand is necessary on a further basis. The purpose of the Uniform Declaratory Judgment Act[5] "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered." Here, both parties' rights are spelled out in the recorded easement. Although the parties agree that the recorded easement is unambiguous, the controversy to be resolved involves differing interpretations of the rights as reflected in the recorded easement.

[25] When interpreting an unambiguous instrument granting easement rights, we interpret the instrument as a matter of law from the plain and ordinary meaning of the language of the grant. *McCauley v. Harris*, 928 N.E.2d 309 (Ind. Ct. App. 2010). Individual words and particular phrases cannot be read alone. *Id.* Instead, the parties' intention is to be ascertained from the instrument as a

---

[4] Findings of fact and conclusions of law were entered and would normally trigger the clearly erroneous standard of review. Because the findings and conclusions were entered in the context of summary judgment, our decision is based upon the Indiana Trial Rule 56(C) materials properly before the trial court. *Campbell v. Spade*, 617 N.E.2d 580 (Ind. 1993).

[5] Ind. Code § 34-14-1-12 (1998).

whole. *Id.* If there is any doubt or uncertainty as to the construction of the language of the easement, we construe the language in favor of the grantee. *Id.*

[26] In Finding of Fact Number 22, the trial court states as follows:

> The affidavits submitted by Duke Energy raise no concerns related to the new infrastructure as to routine maintenance, operation or access to its currently existing overhead lines, towers, poles and other appurtenances. The concerns expressed relate to the possible consequences of possible future contingencies, such as remedial actions required in the event of a natural disaster or the unlikely major reconfiguration of the towers.

Appellant's App. Vol. II, p. 29.

[27] In part, the express, undisputed language of the easement grants to Duke "the perpetual right, privilege, easement and authority to enter upon the real estate hereinafter described and, now or in the future, there to construct, erect, maintain, operate, inspect, patrol, repair, replace, extend, renew and/or remove two (2) lines of metal towers supporting one or more electric transmission lines. . . ." *Id.* at 23. Remedial actions would include repair, replacement, or removal of the towers now or in the future. Duke's affidavits, specifically the Dickey affidavit, conflict with J & J's affidavits, specifically the Blankenbeker affidavit, regarding the placement of the road and the detention basins and the effect of that placement on the rights of the parties. Thus, to the extent there is any doubt or uncertainty as to the construction to be given to the granting language, the uncertainty must be resolved in favor of the grantee, in this case Duke. *See McCauley*, 928 N.E.2d 309. Granting partial summary judgment was improper.

# 2.

Duke contends that this Court lacks jurisdiction over J & J's cross-appeal issue because an order declining to enter a permanent injunction is neither a final, appealable order nor an interlocutory order appealable as a matter of right.[6] Duke argues in the alternative that if we have jurisdiction over this issue, the issue is of no merit.

Indiana Appellate Rule 5 defines the jurisdiction of the Indiana Court of Appeals. Subsection A provides, with certain exceptions, that "the Court of Appeals shall have jurisdiction in all appeals from Final Judgments of Circuit, Superior, Probate, and County Courts, notwithstanding any law, statute or rule providing for appeal directly to the Supreme Court of Indiana." Subsection B provides that the "Court of Appeals shall have jurisdiction over appeals of interlocutory orders under Rule 14" with certain exceptions.

In its opening brief, Duke asserted that the trial court denied J & J's request for permanent injunctive relief. Duke's argument in response to J & J's cross-appeal is that the trial court *declined* to rule on J & J's request for permanent injunctive relief. Relying on that position, Duke argues that J & J's cross-appeal should be dismissed because it is neither a final judgment as defined by Indiana Appellate Rule 2(H), nor is it reviewable under Indiana Appellate Rule

---

[6] Duke has filed a motion to strike the portion of J & J's brief raising the cross-appeal issue, and J & J has filed a response to the motion. We have issued a separate order addressing the motion and response.

14. We agree that the portion of the trial court's order addressing the request for permanent injunctive relief is not reviewable under either of those rules.

[31] J & J asserts that because this Court previously deemed the trial court's order a final appealable order, its issue on cross-appeal is reviewable. The basis for this Court's order, however, was Duke's argument that the grant of partial summary judgment on J & J's request for a declaratory judgment was a final judgment under Indiana Code section 34-14-1-1. That statute provides that the trial court's "declaration has the force and effect of a final judgment or decree." The request for permanent injunctive relief, which was not decided, does not fall under that statute as no rights of parties were declared. Thus, the final judgment here only covers the issues addressed, and injunctive relief was not among those issues. The issue must be reviewable on other grounds.

[32] J & J further contends that the issue is properly before this Court under Indiana Appellate Rule 46(D)(2). That portion of the rule addresses the contents of an appellee's brief, providing "the appellee's brief shall contain any contentions the appellee raises on cross-appeal as to why the trial court or Administrative Agency committed reversible error."

[33] The trial court reserved judgment on the issue of permanent injunctive relief for decision at a later date after an evidentiary hearing where only that issue was addressed. While a party is obligated by the appellate rules to include cross-appeal issues alleging reversible error, a party is not obligated or required by the appellate rules to include on cross-appeal issues that have not yet been decided.

We agree with Duke's argument that J & J's cross-appeal issue should be dismissed, and it is dismissed without prejudice so that the parties can resolve the issue before the trial court should they choose to do so.

[34]    In light of the foregoing, the trial court's judgment is reversed and the matter is remanded for further proceedings.

[35]    Judgment reversed and remanded.

Bradford, J., and Brown, J., concur.